MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2017 ME 222
Docket:        Han-17-329
Submitted
  On Briefs:   November 29, 2017
Decided:       December 7, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, JABAR, HJELM, and HUMPHREY, JJ.

IN RE DOMINYK T.

PER CURIAM

[¶1]  The parents of Dominyk T. appeal from a judgment of the District Court (Ellsworth, *Roberts, J.*) terminating their parental rights to the child. The mother argues, and the father joins in her argument, that the Department of Health and Human Services failed to satisfy its obligation to provide necessary services to the mother and that the record cannot support the finding of parental unfitness or the determination that the termination of her parental rights is in Dominyk's best interest.  The father also contends that, although he is unable to care for the child, the mother and he should both retain their parental rights.  We affirm the judgment.

[¶2]  When the Department petitioned for a child protection order in February 2015, the child had already been residing apart from both parents with family members as part of an agreed upon safety plan.  The child has a genetic disorder that causes rapid growth in the first years of life and can

result in physical and behavioral challenges. The Department alleged in its petition that the father was unable to maintain sobriety and that the mother could not maintain a stable home and safely care for the child.

[¶3] Upon the parties' agreement, the court found in March 2015 that the child was in jeopardy with the mother due to the involuntary termination of her parental rights to two other children in 2005, her inability to keep Dominyk safe or meet his medical needs, her inability to maintain appropriate housing, and her repeated choice of unsafe partners. *See* 22 M.R.S. §§ 4002(6), 4035(2) (2016). The father conceded that, due to his struggles with alcohol abuse, he was unable to care for Dominyk.

[¶4] The Department first filed a petition to terminate the parents' parental rights in February 2016. The court held a trial on that petition in November and December 2016 and was not persuaded that the Department had established the mother's unfitness. On that basis, the court denied the petition, and the Department then transitioned the child into the mother's care.

[¶5] After the Department received new evidence of injuries to Dominyk, it filed another petition to terminate the parents' parental rights on April 11, 2017. The court held a trial on that petition and on July 11, 2017,

entered a judgment granting the petition to terminate the parents' parental rights after finding, by clear and convincing evidence, the following facts, all of which are supported by competent evidence in the record. *See* 22 M.R.S. § 4055(1)(A)(1)(a), (B)(2) (2016); *In re A.M.*, 2012 ME 118, ¶ 29, 55 A.3d 463.

> [The mother] is very willing to take responsibility for Dominyk and to protect him from jeopardy. She is simply unable to care for him consistently. [The mother] worked extremely hard to alleviate the issues that brought him into care. She engaged in counseling . . . for close to 2 years. [The counselor] remains supportive of [the mother] indicating that she is a competent parent committed to her child and able to set appropriate limits for him. At hearing, [the mother] articulated the parenting knowledge that she has acquired. She can describe Dominyk's needs and the parenting skills that she would utilize to deal with him. [Her] parenting progress is contradicted by the observations of the in-home care providers. She cannot consistently apply the parenting skills that she has acquired.

> Dominyk was transitioned into [the mother's] care on December 30, 2016, following the court's denial of the Department's first termination petition. [The mother] received HCT [home and community treatment] services . . . following Dominyk's placement in her home. [The HCT worker] noted that Dominyk exhibited heightened aggression following his return. She observed that [the mother] has a low stress threshold while Dominyk is quick to agitate. This resulted in clashes between the two. [The mother] would become agitated with Dominyk, he would respond with aggression and the HCT worker would intervene to calm the situation. Unfortunately, [the mother] admitted that she couldn't maintain the calm environment. [The mother]'s partner confirmed that he and [the mother] were becoming irritable before March 30th. They weren't calm. Dominyk was hard to handle. [The mother's fiancé] felt that they really needed time away from Dominyk.

4

[The HCT worker] and . . . Dominyk's school nurse noted that [physiological hygiene issues were] a significant concern during his placement with [the mother]. . . . [The HCT worker] addressed her concerns with [the mother]. [The mother] could acknowledge the issue and seek guidance from [the HCT worker]. Unfortunately, [the mother] was unable to adequately assist Dominyk. . . .

Dominyk needs physical activity in his daily routine. [The HCT worker] provided [the mother] with a sheet of physical activities designed to assist Dominyk. While she acknowledged the importance of physical activities for Dominyk [the mother] failed to prompt him to engage in the activities. [The mother] reported that Dominyk was unable to complete specific developmentally targeted tasks.

The trial placement ended on March 30, 2017. The Department removed Dominyk from his mother's care following reports from [the HCT worker] and [the school nurse] of injuries that they had observed on him. The most concerning injuries were a bruise on his wrist and a black eye. [The mother] and her partner . . . have given inconsistent explanations for these injuries. Dominyk's explanations have also been inconsistent. More troubling to the court is [the mother]'s assertion that she was not aware of his black eye. Dominyk's injury was clearly visible to his school nurse and is clearly visible on photographs taken after her report. At a minimum [the mother] failed to care for a concerning injury.

[The mother] is simply unable to take responsibility for Dominyk within a time reasonably calculated to meet his needs. [The mother] is unable to protect him from jeopardy within a time reasonably calculated to meet his needs. While she is able to understand appropriate parenting techniques she is consistently unable to apply them. [The foster mother] has provided foster care for Dominyk for over 2 years. Dominyk was returned to her care after March 30, 2017. She noted that he regressed physically

and emotionally while with [the mother]. He was able to complete simple physical tasks while in the [foster] home that he had been unable to accomplish with his mother. He was able to regain his toilet training in her care as well.

This court finds by clear and convincing evidence that DHHS offered [the mother] and [the father] appropriate services and referred them to providers. [The father] was simply unwilling or unable to engage or make changes. [The mother] was unable to make necessary changes. This court finds that there is nothing more that DHHS could have done to assist [the mother] or [the father] in this case.

. . . .

[The mother] has worked exceptionally hard to acquire the parenting skills needed for Dominyk's care. The difficulty for [the mother] is one of timing. Dominyk cannot continue to wait for his [mother] to do all the things necessary to set up a stable, consistent and safe life. . . . He needs a permanent home now and cannot wait any longer for [the mother] to get her life in order. This is a particularly troubling case because it is clear to this court that [the mother] loves Dominyk dearly. Despite that love, [the mother] is unable to take full responsibility for Dominyk at this time. The court does not believe that she will be able to take responsibility for him within a time reasonably calculated to meet his needs.

. . . .

This court finds by clear and convincing evidence that even though [the mother] may be willing, she is unable to protect Dominyk from Jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet his needs. This court also finds by clear and convincing evidence that even though [the mother] may be willing, she is unable to take responsibility for Dominyk within a time which is reasonably calculated to meet his needs.

[¶6]  The mother contends on appeal that the judgment terminating her parental rights must be vacated because the Department failed to satisfy its rehabilitation and reunification obligations, particularly by failing to investigate the cause of Dominyk's bruises more thoroughly.  *See* 22 M.R.S. § 4041 (2016).  The court found that the Department made significant efforts to assist the mother and that she received multiple and appropriate services.  The court also found that, during Dominyk's three-month trial placement—the first time he had resided full-time with his mother in three or more years—the mother was unable to implement learned parenting skills, resulting in significant physical and behavioral problems for Dominyk; she could not respond effectively when Dominyk became agitated; she could not control her own emotional reactions to his behavior; and Dominyk suffered injuries that, at a minimum, the mother did not treat while Dominyk was in her care.

[¶7]  Based on the facts that the court found, all of which have evidentiary support, the court did not err in finding that the mother was unable to protect Dominyk from jeopardy or take responsibility for him within a time that is reasonably calculated to meet his needs, *see* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii); *In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195,

and it did not err or abuse its discretion in determining that the termination of her parental rights was in Dominyk's best interest, *see* 22 M.R.S. § 4055(1)(B)(2)(a); *In re A.M.*, 2012 ME 118, ¶ 29, 55 A.3d 463; *In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297.  Nor did the court err or abuse its discretion in terminating the parental rights of the father.  *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i), (ii), (iv); *In re Daniel H.*, 2017 ME 89, ¶ 17, 160 A.3d 1182.

The entry is:

Judgment affirmed.

---

Dawn M. Corbett, Esq., Law Office of Dawn M. Corbett, PA, Ellsworth, for appellant mother

Mary Kellett Gray, Esq., Brooklin, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Ellsworth District Court docket number PC-2015-09
FOR CLERK REFERENCE ONLY