MAINE SUPREME JUDICIAL COURT                        Reporter of Decisions
Decision:     2018 ME 75
Docket:       Lin-17-286
Submitted
 On Briefs:   January 11, 2018
Decided:      June 12, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE CHILDREN OF NICOLE M.

HJELM, J.

[¶1]  The parents of three children appeal from a judgment of the District Court (Wiscasset, *Raimondi, J.*) terminating their parental rights to the children. Although the parents do not challenge the court's conclusion that they are unfit within the meaning of 22 M.R.S. § 4055(1)(B)(2)(b) (2017), they contend that the court erred by determining that termination is in the children's best interests, *see* 22 M.R.S. § 4055(1)(B)(2)(a) (2017), because the court also ordered a permanency plan that includes either adoption or a permanency guardianship.  Given the court's findings regarding the circumstances and best interests of the children, the court did not err by terminating the parents' rights to them while also approving a permanency guardianship as a possible permanency plan.  We therefore affirm the judgment.

## I. BACKGROUND

[¶2]  The following facts, which are supported by the evidence, are drawn from the court's judgment and the procedural record.  *See In re Dominyk T.*, 2017 ME 222, ¶ 5, 173 A.3d 1065.

[¶3]   The Department of Health and Human Services became involved with this family in January of 2016 when one of the children was rushed to the hospital after suffering seizures.  Ultimately, that child and one of the other children were diagnosed with "failure to thrive" as a result of the parents' life-threatening failure to feed them adequately.  Several weeks after the first child was hospitalized, the Department filed a child protection petition as to all three children, and in late February, the three children were placed with their paternal grandmother pursuant to a safety plan.  In April of 2016, with the agreement of the parents, the court entered a jeopardy order placing the children in the Department's custody and ordering that the children continue to live with the grandmother.

[¶4]   Both parents have learning disabilities, and the mother also has cognitive impairments and suffers from depression.  Neither parent has meaningful insight into the reasons why the children are in foster care, nor has either parent adequately participated in court-ordered diagnostic and therapy

services or in their children's doctor appointments. The parents initially missed so many visits that the visits were suspended for a time. When visits eventually resumed, the quality of the parents' interactions with the children was concerning until the last few weeks before the termination hearing, when the visits went better. The parents love their children and want to reunite with them, but their personal difficulties have contributed to their failure to "understand, let alone provide[,] the steps necessary to foster a home environment that eliminates the threat of jeopardy and support[s] the nurturing and well-being of their children."

[¶5] Since coming to live with the grandmother, the condition of the two children who had failed to thrive improved "spectacularly," and all three children are doing very well in her care. The grandmother supports the parents' continued involvement with the children and is willing to either serve as the children's permanency guardian or adopt them.

[¶6] A year after the children came into its custody, the Department filed a petition to terminate the parents' rights to the children, and in May of 2017, the court held a three-day consolidated hearing on the termination petition and on a permanency plan for the children. The next month, the court issued a judgment terminating both parents' parental rights. The court found by clear

4

and convincing evidence that both parents are unfit because they are unable or unwilling to protect the children from jeopardy and would not do otherwise within a time reasonably calculated to meet the children's needs; they are unwilling or unable to take responsibility for the children within a time reasonably calculated to meet the children's needs; and they did not make a good faith effort to rehabilitate and reunify with the children. *See* 22 M.R.S. § 4055(1)(B)(2)(b).

[¶7] The court also concluded that termination is in the children's best interests because of the stability and care provided to them by the grandmother as well as her "tireless" advocacy for their interests. In making these best interest determinations, the court considered the children's greatly improved condition while in the grandmother's "excellent care"; the successful integration of the children into the grandmother's family, which includes four other children; and the grandmother's effectiveness in assisting the parents to "maintain their attachment to the children" and her continued willingness to do so. The court also credited the strong support from the children's guardian ad litem for continued placement with the grandmother.

[¶8] In its judgment, the court also established the permanency plan for the children. *See* 22 M.R.S. § 4038-B (2017). After recognizing the policy found

in statutes and case law that favors permanence for children, the court stated that it had "no difficulty in finding that the plan of either permanency guardianship or adoption is clearly in the best interest of [the children] so that they may have permanency with their paternal grandmother in the stable and nurturing environment where they have been placed during the pendency of this action." The court recognized that the grandmother had applied with the Department to be licensed as a foster parent but that the application was denied because of the Department's concerns with the grandmother's domestic partner. The court stated that it was not bound by that administrative decision, however, and found explicitly "that continued placement with [the grandmother] is in the best interest of these children."

[¶9] Both parents appealed from the termination order. *See* M.R. App. P. 2(b)(3); 2(b)(5) (Tower 2016).[1]

## II. DISCUSSION

[¶10] On this appeal, the parents do not contest the court's determination that they are unfit as the children's parents. Rather, they challenge only the court's determination that termination is in the children's

---

[1] This appeal was filed before September 1, 2017; therefore, the restyled Maine Rules of Appellate Procedure do not apply. *See* M.R. App. P. 1 (restyled Rules).

6

best interests, given the court's finding that their best interests would also be served if they continued to live with the grandmother as a permanency guardian.

[¶11] Because the predicate of the parents' challenge to the termination order is the permanency plan that would provide for either a permanency guardianship *or* an adoption, the scope of this appeal must be established with clarity. Although an appeal can be taken from a termination order, a permanency plan order is treated by operation of statute as an interlocutory order and is therefore not itself appealable. 22 M.R.S. § 4006 (2017). Consequently, the parents' appeal cannot be used as a vehicle to directly challenge the permanency plan ordered by the court. Rather, the cognizable question presented here is whether one of the necessary predicates to a termination order, namely, that termination is in the best interest of the child, *see* 22 M.R.S. § 4055(1)(B)(2)(a), is compatible with a determination that a permanency guardianship also is in the child's best interests.

[¶12] "We review the court's factual findings related to the child's best interest for clear error," *In re Thomas H.*, 2005 ME 123, ¶ 16, 889 A.2d 297, and its "ultimate conclusion [regarding the child's best interest] for an abuse of discretion, viewing the facts, and the weight to be given them, through the trial

court's lens," *In re Cameron B.*, 2017 ME 18, ¶ 11, 154 A.3d 1199 (quotation marks omitted). "Upon review for an abuse of discretion, we ask three questions: (1) whether factual findings, if any, are supported by the record pursuant to the clear error standard; (2) whether the court understood the law applicable to its exercise of discretion; and (3) given the facts and applying the law, whether the court weighed the applicable facts and made choices within the bounds of reasonableness." *Hutt v. Hanson*, 2016 ME 128, ¶ 15, 147 A.3d 352 (quotation marks omitted) (alteration omitted).

[¶13] Pursuant to Maine's Child and Family Services and Child Protection Act, a court is required to periodically order a permanency plan during the lifetime of a child protection proceeding, subject to certain exceptions that are not presently applicable.[2]  22 M.R.S. § 4038-B(1).  When a court creates a permanency plan for a child, the court "must determine whether and when, if applicable," one of five plans will be implemented. *Id.* § 4038-B(4).  The following permanency plans are authorized by statute:

- returning the child to a parent;

- placing the child for adoption;

---

[2]  Pursuant to section 4038-B(1), permanency planning hearings are not required when judicial review hearings are not required, which includes, for example, when custody of the child is not with the Department or with a parent. *See* 22 M.R.S. § 4038(1) (2017).

- placing the child in the care of a permanency guardian pursuant to 22 M.R.S. § 4038-C (2017) or a guardian appointed by a probate court;

- placing the child with "a fit and willing relative"; or

- in narrowly drawn circumstances, placing the child in "another planned permanent living arrangement."

*Id.* § 4038-B(4)(A)(1)-(5).

[¶14] Here, the permanency plan for the children called for either adoption or appointment of a permanency guardian. The court explicitly framed that plan in terms of "permanency *with . . . [the] grandmother* in the stable and nurturing environment where [the children] have been placed during the pendency of this action." (Emphasis added.) This specific and essential aspect of the court's best interest analysis requires us to consider how it interrelates with the court's concurrent determination that termination is in the children's best interests.

[¶15] As a general matter, a "central tenet" of the child protection statutes "is the importance of permanency for children subject to child protection proceedings." *In re David W.*, 2010 ME 119, ¶ 6, 8 A.3d 673 (quotation marks omitted). Permanency planning is integrally connected to the best interest determination that a court is called upon to make in a termination proceeding. As we have held, "[p]ermanency planning and the best interest

determination made in a termination proceeding cannot be divorced from one another because a best interest decision necessarily requires the court to consider the long-term living arrangement that will best serve a child's needs. The court's permanency plan for the child is an inextricable part of that decision." *In re Thomas H.*, 2005 ME 123, ¶ 28, 889 A.2d 297. As was true here, a termination hearing is often consolidated with a permanency planning hearing because the resulting record is the "single body of evidence" on which the court rests its best interest analysis that bears on both the issue of termination and the formulation of a permanency plan. *See id.* ¶ 29.

[¶16] Here, the first of the two alternative permanency plans set out by the court is adoption. An adoption will provide "certainty and stability" to the adopted child, *see In re Cameron B.*, 2017 ME 18, ¶ 13, 154 A.3d 1199; *In re David W.*, 2010 ME 119, ¶ 10, 8 A.3d 673, and often results in permanence for the child, *see In re Marcus S.*, 2007 ME 24, ¶ 10, 916 A.2d 225.

[¶17] The question of *who* is the best person to adopt the child, however, is beyond the scope of a termination proceeding because that question must be addressed in a separate adoption action governed by 18-A M.R.S. §§ 9-301 to 9-315 (2017). *See* 4 M.R.S. § 152(5-A) (2017); *Adoption of Isabelle T.*, 2017 ME 220, ¶ 9 n.2, 175 A.3d 639; *In re Tacoma M.*, 2017 ME 85, ¶ 9 n.2, 160 A.3d 537.

Therefore, in a consolidated proceeding where the court addresses a termination petition and establishes a permanency plan, while the court may determine that as a general matter adoption is in the child's best interest and will be the permanency plan, the court would overreach if it were to designate the adoptive party. *See In re Kenneth S.*, 2017 ME 45, ¶ 6, 157 A.3d 244. In this way, the permanency plan of adoption leaves open the important question of who the adoptive parent might be.[3]

[¶18] The other type of permanency plan endorsed here by the court, namely, a permanency guardianship, provides a child with "safe, long-term care" in the custody of the permanency guardian. *See In re Cameron B.*, 2017 ME 18, ¶ 12, 154 A.3d 1199. Unlike with a permanency plan of adoption, where the court may not properly address the question of who is an appropriate adoptive party, establishing a permanency guardianship requires the court to identify a

---

[3] We note that, pursuant to the Home Court Act, the District Court will have exclusive jurisdiction over an adoption petition if there is a pending District Court child protection proceeding involving the same child, *see* 4 M.R.S. § 152(5-A) (2017), even though adoption petitions ordinarily must be filed in a probate court, *see* 18-A M.R.S. § 9-103(a)(1) (2017). In this way, the same court that is familiar with the child's circumstances germane to the child protection action will have the authority to adjudicate the adoption petition.

person who will serve as the permanency guardian based on the particular attributes of the prospective guardian.[4]  *See* 22 M.R.S. § 4038-C.

[¶19]  Another difference between an adoption and a permanency guardianship is that the latter, "[w]hen it is appropriate, . . . allows parents whose children cannot be returned to them to have a meaningful opportunity to maintain a legal relationship with their children and to have the court determine their rights to have contact with their children."  *In re Cameron B.*, 2017 ME 18, ¶ 12, 154 A.3d 1199.  This opportunity is recognized in the law, however, only where a parent's rights to the child have not been terminated because a parent whose rights have been terminated has no legal relationship with the child except that the child's right to inherit from the parent remains intact.  22 MRS § 4056(1) (2017).

---

[4]  In making that determination, the court must consider factors that are highly specific to a prospective permanency guardian by determining whether that person

  A.  [h]as the ability to provide a safe home for the child;

  B.  [h]as a close emotional bond with the child and whether the child has a close emotional bond with the prospective permanency guardian;

  C.  [i]s willing and able to make an informed, long-term commitment to the child;
  D.  [h]as the skills to care for the child; and
  E.  [h]as submitted to having fingerprints taken for the purposes of a national criminal history record check.

22 M.R.S. § 4038-C(1) (2017); *see also In re C.P.*, 2016 ME 18, ¶ 34, 132 A.3d 174 (affirming a judgment denying the parents' request for a permanency guardianship where the court found that the proffered guardian did not satisfy the statutory criteria).

12

[¶20]   This does not mean that the court may order a permanency guardianship *only* when parental rights have not been terminated.   The statutory authorization for a permanency guardianship contains no such limitation, and none is implied.   *See* 22 M.R.S. § 4038-C.   Although there are certain circumstances where the court is no longer required to hold periodic permanency planning hearings, the issuance of a termination order by itself does not have that effect.   *See id.* § 4038-B(2), (3).   This means that permanency planning will be an ongoing post-termination requirement unless the court is specifically relieved of that responsibility pursuant to statute, and that, with the exception of reunifying the child with the parent,[5] all of the permanency plans identified in section 4038-B(4)(A), including creation of a permanency guardianship, remain available to the court.   This is as it should be, so that the court will be authorized to consider as many options as possible when

---

[5]   Pursuant to section 4038-B(4)(A)(1), a court may return a child to a parent as part of a permanency plan only when the parent has fulfilled the responsibilities required by a reunification plan created pursuant to section 4041(1-A)(B).   For at least two reasons, it is self-evident that this will not be possible for a person whose parental rights have been terminated.   First, reunification may be pursued only by a "parent," 22 M.R.S. § 4041(1-A)(B) (2017), and a person whose rights to a child have been terminated is no longer a "parent" for purposes of the child protection laws, *see id.* § 4002(7) (2017).   Second, post-termination reunification would be contrary to the very nature of a termination order, which requires determinations that the person is unfit as a parent and that termination is in the child's best interest.   *See id.* § 4055(1)(B)(2) (2017).   In contrast, none of these considerations impedes a court's consideration of the other four permanency plan options in a post-termination setting.

determining what arrangement best meets the needs and promotes the best interest of the child.

[¶21] To the extent that the plain language of section 4038-B(4)(A) does not make clear that the court may order a post-termination permanency guardianship, the legislative history resolves the issue. *See Manirakiza v. Dep't of Health and Human Servs.*, 2018 ME 10, ¶ 8, 177 A.3d 1264 ("Only if the plain language of the statute is ambiguous will we look beyond that language to examine other indicia of legislative intent, such as legislative history." (quotation marks omitted)). When the Legislature was considering the bill that was ultimately enacted as the permanency guardianship statute, the Department's Director of Policy and Practice for the Bureau of Child and Family Services testified to explain the central purposes underlying the proposed legislation. *See An Act to Establish Permanent Subsidized Guardianship: Hearing on L.D. 1382 Before the Comm. on Health and Human Servs.*, 122nd Legis. (2005) (testimony of Dan Despard, Director of Policy and Practice for the Bureau of Child and Family Services within the Department of Health and Human Services). Several of those stated purposes make clear that a permanency guardianship plan could be created even after a termination order. *Id.* For example, the Director stated that a permanency guardianship would be an

"effective alternative that will honor the needs of older children currently in foster care who express a desire not to be adopted . . . ." *Id.* By casting a permanency guardianship as an alternative to adoption, it is evident that the permanency guardianship was intended to be available to the court even after a termination order had been issued.

[¶22] Additionally, as the Director testified, adding a permanency guardianship to the roster of permanency plans would avoid the situation where a guardianship would have to be imposed in a proceeding that is separate from the child protection action—i.e., in a Title 18-A guardianship proceeding in a probate court—where a different judge who may well be less familiar with the child's circumstances would be called upon to adjudicate the question of whether a guardianship should be imposed and who the guardian should be. *Id.* With the availability of a permanency guardianship plan within the child protection case itself, a District Court judge—who should be the same judge who is already presiding over the child protection proceeding—would make that determination.[6] The rationale for creating this pathway for the judge

---

[6] With the 2016 enactment of the Home Court Act, *see* 4 M.R.S. § 152(5-A); P.L. 2015, ch. 460, § 1 (effective July 29, 2016), a Title 18-A guardianship action that would have been filed in a probate court now will be both commenced and adjudicated in the District Court if a child protection proceeding involving the same child is already pending there. This was not the case in 2005 when section 4038-B(4)(A)(3) was enacted, *see* P.L. 2005, ch. 372, § 6 (effective Sept. 17, 2005), which explains why the Legislature created such a process for child protection cases.

in the child protection case to also adjudicate the guardianship issue is not diminished after a termination order has been issued; even if the child protection case is in a post-termination posture, the benefit of allowing the same judge to preside over the child protection case and the guardianship issue is no less important than it would be before any termination order is issued.

[¶23]  We also note that, unlike in a Title 18-A guardianship, a permanency guardian appointed in a child protection case pursuant to section 4038-B(4)(A)(3) is eligible for a guardianship subsidy in some circumstances. *See* 22 MRS § 4038-D (2017).  A parent's obligation to pay child support often ends when that parent's parental rights are terminated.  *See id*. § 4056(1); *Guardianship of Anthony J.*, 2009 ME 97, ¶ 6, 980 A.2d 1250 (explaining that the "only exception" to the rule that a terminated parent "has no duty to provide ongoing support for the child" is that a court may, pursuant to 22 M.R.S. § 4056(5) (2017), "order a parent who was convicted of a crime against the child prior to the termination of parental rights to pay a lump sum as child support").  The provision for a guardianship subsidy is therefore an important

---

Pursuant to the Home Court Act, an adoption petition relating to a child who is the subject of a child protection petition also must be filed in the District Court rather than in a probate court. *See* 4 M.R.S. § 152(5-A).  Clearly, the best practice is for the petition to be heard and adjudicated by the same District Court judge who has been presiding over the child protection case.

possible feature of a permanency guardianship that can be even more important after termination than before termination, when the parents are required to pay for the children's material needs. *See id.* § 4036(1)(G) (2017).

[¶24] For these reasons, we conclude that a permanency guardianship is not necessarily incompatible with a court's determination that a termination of parental rights is in the child's best interest. To be sure, because a permanency guardianship may result in less permanency than adoption and therefore, to that extent, may be less effective in achieving the "central tenet" of permanency for children, *see In re David W.*, 2010 ME 119, ¶ 6, 8 A.3d 673 (quotation marks omitted), there will be only limited countervailing circumstances where a court will terminate the parental rights of both parents and also approve a permanency guardianship. The legislative history described above proposes one situation where those determinations could overlap—where an older child does not want to be adopted but whose best interest will be served by the measure of stability and security that a permanency guardianship can provide. *See supra* ¶ 21.

[¶25] Given the court's factual findings, this case provides another such example. By all accounts, the grandmother has provided the three children with exemplary care, support, and advocacy, and the court found, with

considerable support in the record, that the children unquestionably should continue to live with her. That result would be subject to some uncertainty if the court established a permanency plan limited to adoption, because, as discussed above, *see supra* ¶ 17, the court would act beyond its authority in the child protection proceeding if it were to designate the grandmother as the adoptive parent. That level of uncertainty is enhanced to some degree because the Department had denied the grandmother's application to be licensed as a foster parent.[7] The court therefore designated alternative post-termination permanency plans that would ensure that, in the end, the children remained with the grandmother.[8] In that way, the court legitimately viewed that outcome as being at least as important as the process used to achieve that result and the nature of the grandmother's ultimate legal relationship with the children.

[¶26] The parents argue that the availability of a permanency guardianship with the grandmother establishes that termination was not

---

[7] The grandmother filed an appeal within the Department from that denial, and the matter remained pending when the termination hearing concluded. As was discussed during the termination hearing, the denial created the prospect that the Department would object to an adoption petition filed by the grandmother. As the Department itself pointed out to the court, however, the court is authorized to overrule such an objection and grant the petition. *See* 18-A M.R.S. § 9-302(a)(3) (2017).

[8] In addition to testifying at the termination hearing that she would be willing to serve as a permanency guardian, the grandmother and her partner filed a petition for private guardianship for the children in the District Court on the second day of the termination hearing.

necessary to promote the children's best interests because the children could continue in the grandmother's care without terminating the parents' parental rights. This contention, however, does not account for the prospects of impermanence in a permanency guardianship—despite the contrary implication of that statutory term—particularly when a parent's parental rights have not been terminated, because the parent is statutorily authorized to petition the court not only to determine rights of contact but even to terminate the permanency guardianship itself.[9] *See* 22 M.R.S*.* §§ 4038-C(3), (6); *In re Haylie W.*, 2017 ME 157, ¶ 4, 167 A.3d 576.

[¶27] For the reasons we explained at the outset of our discussion, this appeal is not from the permanency plan of adoption or a permanency guardianship. *See supra* ¶ 11. Rather, given the restricted scope of this appeal, the parents' argument is limited to an assertion that the court's approval of a permanency guardianship as a way to protect the children's best interests

---

[9] In cases where the evidence raised the prospect of disruptive disputes between a parent and a guardian, we affirmed decisions of the trial court that a permanency plan of adoption—and not a permanency guardianship—is in the child's best interest. *See In re Cameron B.*, 2017 ME 18, 154 A.3d 1199; *In re C.P.*, 2016 ME 18, 132 A.3d 174; *In re David W.*, 2010 ME 119, 8 A.3d 673. Although the court here did not find that type of difficulty in the relationship between the parents and the grandmother, a best interest determination sufficient to support termination does not require the existence of such a problem. *See* 22 M.R.S. § 4055(2) (2017) ("In deciding to terminate parental rights, the court shall consider the best interest of the child, the needs of the child, including the child's age, the child's attachments to relevant persons, periods of attachments and separation, the child's ability to integrate into a substitute placement or back into the parent's home and the child's physical and emotional needs.").

necessarily undermines the conclusion that termination is in the children's best interests. The court explained, however, that either a permanency guardianship or an adoption would allow the children to "have permanency with their paternal grandmother in the stable and nurturing environment where they have been placed during the pendency of this action." The court's goals therefore were to ensure that the children would have the permanence that comes with a termination of parental bonds and also that the children would be placed with the grandmother. This is a sufficient basis for the court's decision to terminate parental rights while leaving available the option of placing the children in a permanency guardianship, because the termination order and either permanency plan will allow the children to move forward.

[¶28] We therefore conclude that, in the circumstances of this case, termination of parental rights is not inconsistent with a permanency guardianship.[10]

---

[10] Although, given the circumstances of this case, the designation of two possible permanency plans does not call the termination determination into question, the fact remains that the court has not yet ordered a particular permanency plan for the children. This creates more uncertainty for the children than is intended by the permanency planning statute. See 22 M.R.S. § 4038-B(4)(A) (2017) (referring to "[t]he permanency plan" (emphasis added)); see also In re David W., 2010 ME 119, ¶ 6, 8 A.3d 673 (emphasizing the importance of permanency for children). Any error by the court in failing to specify a single permanency plan does not affect the termination order and is not appealable in any event, see 22 M.R.S. § 4006 (2017), and therefore does not constitute a basis for relief. Nonetheless, as the case proceeds in the trial court, the court will now have the opportunity to specify the permanency plan that will actually be implemented.

The entry is:

Judgment affirmed.

———————————

Rory A. McNamara, Esq., Drake Law, LLC, Berwick, for appellant mother

Nathaniel Seth Levy, Esq., Brunswick, for appellant father

Janet T. Mills, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Wiscasset District Court docket number PC-2016-01
FOR CLERK REFERENCE ONLY