MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2019 ME 59
Docket:       Ken-18-436
Submitted
 On Briefs:   April 9, 2019
Decided:      April 18, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE CHILDREN OF BETHMARIE R.


PER CURIAM

[¶1] The mother of the two children at issue in this case appeals from a judgment of the District Court (Waterville, *Stanfill, J.*) terminating her parental rights to the children pursuant to 22 M.R.S. § 4055(1)(A)(1)(a), (B)(2)(a)-(b)(i), (iv) (2018).[1] The mother contends that (1) the evidence admitted at the termination hearing was insufficient to support the court's unfitness finding, (2) in making its best interest finding the court erred by focusing on who should adopt the children rather than focusing on the central question of whether they should be adopted by anyone, and (3) the procedural interaction between the Probate Court and the District Court in this case deprived her of due process. We affirm the judgment.

---

[1] Concerning one of the children, the father's parental rights were previously terminated; concerning the other, the putative father's motion for genetic testing was granted and the results were pending at the time the court entered its judgment.

[¶2] We recently addressed this matter in affirming the court's jeopardy order concerning these children. *In re Children of Bethmarie R.*, 2018 ME 96, ¶ 1, 189 A.3d 252. In doing so, we recited in detail the procedural history of the case leading to the jeopardy order as well as the court's supported factual findings; we do not repeat them here. *Id.* ¶¶ 2-13, 25. Similarly, we do not repeat the relevant facts relating to the mother's conviction for criminal restraint by a parent (Class C), 17-A M.R.S. § 303(1)(A) (2018)—a case that concerned these children—which we discussed in *State v. Retamozzo*, 2016 ME 42, 135 A.3d 98.

[¶3] While our decision in the mother's appeal from the jeopardy order was pending, the Department of Health and Human Services filed a petition to terminate the mother's parental rights. Following our decision, the court held an evidentiary hearing on August 8, 2018, at which the children's maternal grandmother, the grandmother's ex-husband, the Department's caseworker, a Waterville Police detective, the mother, the children's former therapist, and the guardian ad litem testified. On October 16, 2018, the court entered its judgment terminating the mother's parental rights, from which the mother timely appealed.

[¶4]    The court made the following findings of fact by clear and convincing evidence, all of which are supported by competent evidence in the record:[2]

> In the jeopardy order, this court found that the children had suffered serious emotional harm from [the mother], and would continue to do so if returned to her care. The court found that contact between [the mother] and the children was not in the best interest of the children. The court specifically found that [the mother] subjected the children to "treatment that is heinous or abhorrent to society" under 22 M.R.S. § 4002(1-B) and that she had abandoned five of her other children. As a result, the court found that not only were the children in jeopardy with [the mother] but that reunification with her was not in the best interest of the children.
>
> Nothing has happened since then to change this court's view of the situation. [The mother] has not accepted any responsibility for her actions, nor does she have any insight into the impact on the children of any of her actions. Indeed, her view of the past and present situation is notably inconsistent with reality and truth.
>
> Despite this court's finding that visits were not in the best interest of the children and despite this court's denials of [the mother]'s repeated requests for visits, [the mother] continued to take matters into her own hands. She showed up, uninvited and unannounced, at several events the children attended with [the grandmother]. She repeatedly tried to get [her daughter] in particular to come with her. She caused scenes at these events, upsetting the children and family. She repeatedly called [her daughter] to come out and meet her. She frequently goes by the children's home, parks her car nearby, and watches what is happening in an effort to see the children.

---

[2] Because the same judge heard the evidence at the jeopardy hearing, the court was entitled to consider that evidence at the termination stage. *In re Children of Bethmarie R.*, 2018 ME 96, ¶ 1, 189 A.3d 252; *In re Caleb M.*, 2017 ME 66, ¶ 23, 159 A.3d 345.

The children, especially [her daughter], were triggered and escalated after the confrontations at [two events]. At both of these events, [the mother] caused a scene . . . . She would refuse to leave and would yell things like the children need to come with her, that she has a plan, that the Department and [the grandmother] are stealing her children, and the like. This kind of behavior is a particular trigger for the children in light of all of the unresolved issues surrounding the time she "kidnapped" them. (Footnote omitted.)

. . . .

[The mother]'s testimony is very telling. She denied that she had ever abandoned [another of her] daughter[s] . . . . She denied she had ever abandoned her other four children. She denied being aware that any of her parental rights have ever been terminated to any other children. She denied that she had taken [the children at issue in this case] without permission; indeed, she continued to insist to this court that she had permission to bring the kids to Florida. All of those statements are contrary to findings of other courts and contrary to the findings of this court as set forth in the Jeopardy Order. She denied having any mental health issues that needed to be addressed. She disagreed with [an examining psychologist's] diagnosis and findings. She denied she had any pattern of self-defeating behavior. She denied that she has "different" views on parenting except to say that everyone does. She denied that the children have any concerns about the "kidnapping[.]" If they did, she denied that those concerns are warranted.

Although she acknowledged that she understood this court's jeopardy findings, she flatly stated that they were not accurate. She does not feel that she has anything to work on in order to reunify with her children. When asked about the court's findings regarding the incident of biting [her son] and taking the children out of Maine, she flatly stated "these are not facts to me[.]"

She admitted going to [a] school concert in March. She knew there was a court order that said it was not in the best interest of the children to see her. Nonetheless, she felt it was not a mistake for her to be there. She would do the same thing again. It did not ruin the experience for [her daughter] or have any negative impact on her.

She also admitted showing up at [a community] event in June. She went there specifically to see the children. Again, she said it was not a mistake for her to be there. She would not have done anything differently, except maybe she would have come earlier.

She admitted calling the [grandmother's] home and having [her daughter] come out and meet her on several occasions. She understood that neither the Department nor [the grandmother] permitted her to do that, but testified that it was not a mistake on her part. She also testified that if she had to do it over, she would call more often.

She admitted going to the [grandmother's] home in July. She did it to see the children. She was aware she was not supposed to do that according to the Department. Again, when asked what she would do if she had the opportunity to do it over, she said she would do it again. She simply wanted to see the children and could not understand why there was anything wrong with that.

When asked, [the mother] stated that she knows how the children feel. She is adamant that they love her, that she is their mother, and that they want to be with her. It is entirely the fault of the Department and of [the grandmother] that they are not together.

This court agrees with the assessment of the Guardian ad litem. [The mother] has not accepted responsibility for anything. She has no insight into how anything she has done has impacted the children, when in fact everything she has done has impacted them. Without any insight and without any

acknowledgment of her past actions, she has not, can not, and will not change.

. . . .

The court also finds that termination is in the best interest of the children so that they may have permanency. The Child and Family Services and Protection Act clearly states a policy favoring permanency for children. (Citations omitted.)

The children have been in the care of [the grandmother] for most of their lives, with her ex-husband . . . also acting as caretaker. That is the home they know. Although [the daughter] in particular wants her mother in her life, they are bonded to [the grandmother] and settled in to that home. It is in their best interest to have a safe, predictable and stable home. It is particularly in their best interest to end all the ongoing court proceedings, proceedings that have raised and dashed hopes and have sent mixed signals to the children for years. They need closure, both from court proceedings and from worrying about what will happen with their mother.

The plan has been for adoption by [the grandmother]. Consideration ought to be given to adoption by [her ex-husband] as a coparent as well. . . . Absent termination, there will always be doubt and uncertainty for [the grandmother] and for the children as to what the future holds with [the mother].

. . . .

In summary, therefore, this Court finds by clear and convincing evidence that [the mother] is unable to protect her children from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the children's needs, and that she has failed to make a good faith effort to reunify and rehabilitate. 22 M.R.S. §4055(1)(B)(2)(b)(i), (iv). Likewise, it is in the children's best interest that [the mother]'s rights be terminated. 22 M.R.S. §4055(1)(B)(2)(a).

[¶5]   Given these supported factual findings, we review the court's unfitness finding for clear error and find none.  *See In re Child of Kaysean M.*, 2018 ME 156, ¶ 5, 197 A.3d 525.

[¶6]   Concerning the court's ultimate conclusion that termination was in the children's best interests, which we review for an abuse of discretion, *id.*, the mother is correct in noting that we have said that "[t]he question of *who* is the best person to adopt the child . . . is beyond the scope of a termination proceeding because that question must be addressed in a separate adoption action . . . [t]herefore, in a consolidated proceeding where the court addresses a termination petition and establishes a permanency plan, while the court may determine that as a general matter adoption is in the child's best interest and will be the permanency plan, the court would overreach if it were to designate the adoptive party."  *In re Children of Nicole M.*, 2018 ME 75, ¶ 17, 187 A.3d 1 (citations omitted).

[¶7]   For two reasons, the court's best interest findings do not constitute factual errors or an abuse of discretion.   First, contrary to the mother's argument, the court's findings were not predicated solely on an assumption that the grandmother would adopt the children.  The court found that

> [i]t is in [the children's] best interest[s] to have a safe, predictable and stable home.  It is particularly in their best interest[s] to end all

> the ongoing court proceedings, proceedings that have raised and dashed hopes and have sent mixed signals to the children for years. They need closure, both from court proceedings and from worrying about what will happen with their mother.

Those findings, which acknowledge our oft-stated recognition of the Legislature's emphasis on permanency for children, *see, e.g.*, *In re Child of Amanda H.*, 2019 ME 39, ¶ 5, --- A.3d ---, are not predicated on an adoption by a specific person.

[¶8]  Second, while the court noted that "[t]he plan has been for adoption by [the grandmother]," it did not declare that to be the inevitable result of its termination judgment;[3] rather, the court simply recognized the reality of the situation—the children had been in the legal care of their grandmother for the great majority of their lives.  *See In re Children of Bethmarie R.*, 2018 ME 96, ¶¶ 2-9, 189 A.3d 252.  To the extent the court may have "overreach[ed]," *In re Children of Nicole M.*, 2018 ME 75, ¶ 17, 187 A.3d 1, we make clear that we do not opine on who should become the adoptive parent(s) in a prospective adoption proceeding.  *See id.*

[¶9]  Finally, the mother contends that the interaction between the Probate Court and the District Court in resolving their respective cases

---

[3]  The court could not have made such a determination given that the parental rights of the putative father of one of the children had not been resolved at the time of the hearing, *see supra* n.1.

concerning the children deprived her of due process.  Although that question concerned us as well in the mother's first appeal, *see In re Children of Bethmarie R.*, 2018 ME 96, ¶¶ 26-27, 189 A.3d 252, we concluded that the mother had not been deprived of due process, *id.* ¶ 25.  Nothing that occurred at the termination hearing changes that conclusion.

The entry is:

Judgment affirmed.

---

Julian Richter, Esq., Richter Law, LLC, Gardiner, for appellant mother

Aaron M. Frey, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, for appellee Department of Health and Human Services

Waterville District Court docket numbers PC-2017-41 and -42
FOR CLERK REFERENCE ONLY