MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2019 ME 149
Docket:        And-19-128
Submitted
 On Briefs:    September 10, 2019
Decided:       October 1, 2019

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

## IN RE CHILD OF OLIVIA F.

PER CURIAM

[¶1] Olivia F. appeals from a judgment of the District Court (Lewiston, *Martin, J.*) terminating her parental rights to her child pursuant to 22 M.R.S. § 4055(1)(A)(1)(a), (B)(2)(a), and (B)(2)(b)(i)-(iv) (2018).[1] She argues that the court erred as a matter of law in concluding that her failure to appear on the second day of the two-day termination hearing constituted "abandonment," and she asserts that there was not clear and convincing evidence to support the court's finding that she had the "intent to forego parental duties." 22 M.R.S. § 4002(1-A) (2018). The mother further argues that the court abused its discretion in determining that termination of her parental rights is in the best interest of the child because, in making that determination, the court went

---

[1] The child's father has not been identified, and his parental rights were terminated after he did not respond to notice via newspaper publication of the child protection proceedings. That judgment, entered after the judgment now on appeal, is not at issue here.

2

beyond the scope of a termination proceeding and speculated about who would adopt the child post-termination. We affirm the judgment.

## I. BACKGROUND

[¶2] The Department petitioned for a child protection order and a preliminary protection order for the child in October 2017, when the child was two years old. One year later, following the entry of a preliminary protection order and a jeopardy order, the Department filed a petition to terminate the mother's parental rights to the child. *See* 22 M.R.S. § 4052 (2018). The court held a consolidated hearing on that petition and on the issue of placement on January 25 and February 25, 2019.[2] The mother was present at the first day of the hearing, but at the outset of the second day, the mother's attorney stated on the record that although her client had "been in the courthouse this morning," she was "not in the courtroom," had "chosen not to come in," and may in fact have "left the courthouse." The mother was paged to the courtroom, and the court recessed while two Department caseworkers tried to locate her. The parties, other than the mother, and counsel returned to the courtroom, and the

---

[2] In January 2018, the court (*Beliveau, J.*) entered an order for an expedited decision on placement of the child with his maternal grandfather pursuant to the Interstate Compact on the Placement of Children. *See* 22 M.R.S. §§ 4191-4247 (2018). By January 25, 2019, the first day of the termination hearing, the suitability of that placement had not yet been decided. The court issued a written order scheduling a second day of hearing to allow the parties to present evidence as to the issue of placement.

mother's attorney reported on the record that she had reached the mother by telephone and learned that the mother "is not present in the courthouse, and does not plan to return." The court proceeded with the hearing, taking additional evidence, including evidence related to placement. Before us, the mother does not dispute these facts.

[¶3] The court entered a judgment in March 2019 granting the petition to terminate the mother's parental rights after finding by clear and convincing evidence all four statutory grounds of parental unfitness and that termination is in the best interest of the child. *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(iv) (2018). The court found as follows:

> [The mother] is 19 years-old and suffers from chronic substance use. Evidence reveals that [the mother's] drug use is longstanding and significant. Much of it stems from her own trauma suffered as a young child. Nonetheless, her drug abuse and chaotic lifestyle has landed her in jail on several occasions throughout the reunification process. In fact, initially the Department's obligation to reunify with [the mother] was suspended until [the mother] was released from jail. Over the course of the reunification process [the mother] has done little to alleviate jeopardy.

> The Jeopardy Order . . . required [the mother] to participate actively and consistently in services; sign all necessary releases; not to use or possess alcohol, illicit drugs, or prescription drugs except when used as prescribed by a qualified health professional; subject to random drug and alcohol testing; maintain safe and stable housing free from domestic violence, drugs and alcohol; and

4

refrain from any/all criminal involvements and abide by the terms of probation conditions, if any.

Although there is evidence that [the mother] did well in services between July 2018 and September 2018 when she attended Crossroads (substance abuse recovery program), she has failed to successfully complete the reunification process including Crossroads aftercare plan. For example, despite her successes during these 2 ½ months, she's had no contact with [the child] since September 2018; was incarcerated on three different occasions; her whereabouts were unknown during the months of November and December 2018 and she was arrested again on January 2, 2019 with a release date of January 31, 2019; was not consistent in individual or substance abuse counseling; did not follow recommendations of engaging in the Maine Enhancement Parenting Program (MEPP) and/or the Family Treatment Drug Court (FTDC); and did not complete the CODE evaluation. There simply has been no substantial progress over the last 16 months on [the mother's] part. [The mother] has failed to make a good faith effort to rehabilitate and reunify with [the child].

. . . . The Court finds that [the mother] has a chronic substance use disorder that has not been alleviated and has prevented her from taking responsibility for her child. In fact, [the mother] tested positive for cocaine just a day prior to the second day of trial in this case—just one of the reasons she chose not to attend the second day of the termination hearing.

The Court further finds that [the mother] abandoned [the child] by failing to attend the second day of the termination trial. 22 MRS § 4002(1-A)(E) and (F); *see also*, 22 MRS [§ 4055(1)(B)(2)(b)(iii)]. Such a refusal to participate in the termination proceeding indicates a strong "intent to forego parental duties." *Id.* § 4002(1-A)(F); *see e.g.*, *In re Child of Kaysean M.*, 2018 ME 156, 197 A.3d 525 (Me. 2018).

The Court is tasked in determining whether [the mother] is willing or able to protect [the child] from jeopardy, or, will be able

to take responsibility for [the child] within a time reasonably calculated to meet [*the child*]*'s* needs, and she simply cannot. . . . This case has been pending since October 19, 2017, when [the child] was 2 ½ years old, for a period of over 16 months. Each month is a long time in the life of a child this age. With no certain timeline in sight it is clear that [the mother] cannot take responsibility for [the child] within a time reasonably calculated to meet the needs of this young boy.

. . . .

[The child] is a few months away from turning 4 years-old. He has been placed with the maternal great-grandmother . . . since the onset of this case. There is no question that [she] has the ability to provide a safe home for [the child], which she has done for the last 16 months. There is also ample evidence to support a close emotional bond between [the great-grandmother] and [the child]. [She] has also shared a willingness and ability to make an informed, long-term commitment to [the child]. By all accounts, [she] and her husband have provided [the child] with exemplary care and support for the last 16 months.

The GAL testified that it would not be in [the child]'s best interest to keep open the continued possibility of change, that he needs permanency, and that termination of parental rights is in [the child]'s best interest. The GAL recommends termination of [the mother]'s parental rights and adoption as the permanency plan. Based on the evidence presented, the Court finds that it is in [the child]'s best interest to terminate [the mother's] parental rights and proceed with adoption.

(Footnotes omitted.) At the end of the judgment, the court ordered a permanency plan of adoption.

[¶4] The mother timely appealed the judgment. *See* 22 M.R.S. § 4006 (2018); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶5] We review the court's findings of fact for clear error and the court's ultimate determination that termination of the parental rights is in the child's best interest for an abuse of discretion. *In re R.M.*, 2015 ME 38, ¶ 7, 114 A.3d 212. We will "affirm an order terminating parental rights when a review of the entire record demonstrates that the trial court rationally could have found clear and convincing evidence in that record to support the necessary factual findings as to the bases for termination." *Id.* (quotation marks omitted).

### A.  The Mother's Unfitness

[¶6] A court need find only one of four statutory grounds of parental unfitness to find that a parent is unfit to parent his or her child. 22 M.R.S. § 4055(1)(B)(2)(b). "Where the court finds multiple bases for unfitness, we will affirm if any one of the alternative bases is supported by clear and convincing evidence." *In re M.B.*, 2013 ME 46, ¶ 37, 65 A.3d 1260. Here, the court found the mother unfit based on all four grounds of unfitness, *see* 22 M.R.S. § 4055(1)(B)(2)(b), and the mother concedes that the evidence is sufficient to support at least one of those grounds. We agree, and we affirm the court's finding of at least one ground of parental unfitness.

[¶7] The mother, nevertheless, asks us to review in particular the court's finding as to one ground of unfitness—that she abandoned the child by failing to attend the second day of the hearing—because that finding could be used against her in any future child protective proceedings. *See* 22 M.R.S. § 4002(1-B)(A)(1) (2018). A parent's failure to respond to a notice of a child protection proceeding, including the parent's failure to attend any portion of the termination hearing, may be taken by the court as evidence of the parent's intent to forego his or her parental duties. *See* 22 M.R.S. §§ 4002(1-A)(E), (3), 4055(1)(B)(2)(b)(iii) (2018); *In re Children of Anthony N.*, 2019 ME 64, ¶¶ 6, 10, 207 A.3d 1191; *In re Child of Kaysean M.*, 2018 ME 156, ¶¶ 3-4, 6-7, 197 A.3d 525; *In re Child of Tanya C.*, 2018 ME 153, ¶¶ 1, 12, 14, 198 A.3d 777. A court may find that the parent did not abandon a child, however, if the parent shows good cause for the absence. *See In re Child of Kaysean M.*, 2018 ME 156, ¶ 7, 197 A.3d 525; *In re A.M.*, 2012 ME 118, ¶ 19, 55 A.3d 463; *In re Robert S.*, 2009 ME 18, ¶ 16 n.1, 966 A.2d 894.

[¶8] The mother failed to attend the second day of the hearing, and the court did not find that she had shown good cause for her absence. Accordingly, the court did not err in finding that she had the intent to forego her parental duties and had therefore abandoned the child. *See* 22 M.R.S. §§ 4002(1-A)(E),

(3), 4055(1)(B)(2)(b)(iii). Because the court did not err in finding abandonment, we need not consider whether, if the finding of abandonment *had not been* supported by the evidence, such a finding would be vacated—despite the presence of one or more other, supported, findings of unfitness—because of possible future consequences in other child protection matters. *See id.* § 4002(1-B)(A)(1).

## B. The Best Interest of the Child

[¶9] The mother argues that the court erred in speculating that the child would be placed with the great-grandmother while simultaneously determining that termination of the mother's parental rights is in the best interest of the child. Where a court consolidates a hearing on a petition for termination of parental rights with a hearing on permanency planning, a court may determine both whether termination of an unfit parent's parental rights is in the best interest of the child and, if so, what the permanency plan for the child will be given the termination of parental rights. *See In re Children of Nicole M.*, 2018 ME 75, ¶ 15, 187 A.3d 1; *In re Thomas H.*, 2005 ME 123, ¶ 28, 889 A.2d 297. The ultimate "question of *who* is the best person to adopt the child" is, however, "beyond the scope of a termination proceeding because that question

must be addressed in a separate adoption action." *In re Children of Nicole M.*, 2018 ME 75, ¶ 17, 187 A.3d 1; *see* 18-C M.R.S. §§ 9-301 to 9-315 (2018).[3]

[¶10]  The court here acted within the scope of its authority because, although the court noted that the great-grandmother has "shared a willingness and ability to make an informed, long-term commitment to" the child and that the plan for the child is to "proceed with adoption," "it did not declare that to be the inevitable result of its termination judgment," *In re Children of Bethmarie R.*, 2019 ME 59, ¶ 8, 207 A.3d 197, or state a permanency plan of adoption by the child's great grandmother.  The court did not err or abuse its discretion in determining that termination of the mother's parental rights was in the child's best interest.

The entry is:
Judgment affirmed.

---

Rory A. McNamara, Esq., Drake Law, LLC, Berwick, for appellant mother

Aaron M. Frey, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Lewiston District Court docket number PC-2017-87
FOR CLERK REFERENCE ONLY

---

[3]  The Probate Code was amended and recodified effective September 1, 2019, replacing former Title 18-A with new Title 18-C.  *See* P.L. 2019, ch. 417; P.L. 2017, ch. 402.