MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2018 ME 7
Docket:        And-17-361
Submitted
  On Briefs:   January 11, 2018
Decided:       January 23, 2018

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.


IN RE EMMA C.


PER CURIAM

[¶1]  The father of Emma C. appeals from a judgment of the District Court (Lewiston, *Lawrence, J.*) terminating his parental rights to eleven-year-old Emma pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(ii)-(iv) (2017).[1]  He challenges the sufficiency of the evidence as to unfitness as well as the court's finding and discretionary determination that termination was in the child's best interest.  Additionally, the father contends that the court should have ordered a permanency guardianship instead of terminating his parental rights.  We affirm the judgment because the evidence supports both the court's factual findings and its discretionary determinations.

---

[1]  The mother's parental rights were terminated in a separate proceeding in March of 2017, and she is not a party to this appeal.

## I. BACKGROUND

[¶2]  Competent record evidence supports the court's findings, by clear and convincing evidence, that the father is unwilling or unable to take responsibility for the child within a time that is reasonably calculated to meet her needs; that the father failed to make a good faith effort to rehabilitate and reunify with the child; that the father abandoned the child; and that termination of the father's parental rights, as opposed to a permanency guardianship, is in the child's best interest.  These findings and discretionary determinations are based on the following supported findings of fact:

> The Department filed a Petition For Child Protection Order regarding [the child] on April 29, 2016. . . .  Around that time, [the permanency caseworker for the Department] tried to contact [the father] at the phone number he provided to the Department, but it did not work.  [She] then tried to serve [him] with the Petition at the residence stated on his license, but there was nobody there.  [She] left her card at the residence, but never heard from [him].  Nevertheless, [he] showed up for the summary preliminary hearing on the preliminary protection order on May 9, 2016, and waived his right to the hearing.  While at the court, [he] asked for a meeting to discuss visitation with [the child] and that meeting was set for the next morning.  On May 10, 2016, [the permanency caseworker], the [guardian ad litem (GAL)] and [the father's attorney] were present for the meeting on visitation, however, [the father] failed to appear.  Shortly after missing the May 10th meeting, having agreed to leave [the child] in the Department's custody, [the father] moved to Florida without telling the Department that he was doing so.

. . . According to [the permanency caseworker], in a May 9th interview, [the child] told her that [the father] rarely ever had contact with her; maybe five times in the preceding five years according to memory. During that interview, [the child] appeared to be very anxious about seeing [the father] due [to] having little contact with him in the preceding five years. After pausing to consider the prospect of seeing [her father], [the child] told [the permanency caseworker] that she did not want to have contact with him. . . .

. . . A Jeopardy Order as to [the father] was granted on July 11, 2016, after [the father] failed to appear for the hearing. Jeopardy as to [the father] was due to the risk to [the child] for serious physical harm, serious emotional harm and/or serious neglect based on his substance abuse and inability to protect her from the jeopardy posed by [her mother] ([the child] was exposed to drug use and paraphernalia by her mother and [the father] was not aware of or did not take any steps to protect [the child] from [the mother's] behaviors) and his lack of a relationship with [the child]. [The father's] criminal history, including domestic violence assault, also raised issues of concern in regard to [the child]. . . .

[The father] testified that he currently is residing in . . . Florida, in a hotel. . . . He has not had any contact with [the child] since April of 2016. . . . [The father] acknowledged that because he was a transient when this matter began, he was unable to fight for custody of [the child]. He also acknowledged that he had not fought for custody of [her] even though she was in the Department's custody because [she] had been placed with [the foster parents] and he understood that [the foster mother] was a good mother. When [the father] failed to appear at the judicial review conducted on December 15, 2016, the court issued a cease reunification order for him due to his lack of involvement with the Department, the court proceedings in this case, the required services and contact with [the child].

. . . .

. . . While [the father] is willing to let [the child] remain with [the foster family], he does not agree to the termination of his parental rights to [the child].  Consequently, [the father] wants the court to create a permanency guardianship for [the child] with the [foster parents].  The court notes, however, that it has been over a year since [the father] has had any contact with [the child]. . . .

. . . [The father's] plan to remain in Florida and attempt reunification with [the child] twice a month does not impress the court as being either well conceived or really committed to meeting [the child's] needs in a timely fashion.

[The second permanency caseworker] testified that the [foster parents] have been very involved with [the child].  [The foster mother] is [related to the child] and [the child] often stayed with the [foster family] prior to being placed with them by the Department.  According to [the caseworker], [the child] is doing great and thriving in [their] home; they are very involved in [the child's] activities and her schooling.  [The foster mother] testified that initially [the child] was shy, reserved and parentified when the Department placed her with them.  [The foster mother] observed that [the child] is more outgoing and relaxed – now she is "just being a kid."  [The foster mother] added that as the placement has gone on, [the child] fits into their family, she feels like one of the [foster parents'] kids and she is treated as that way. [The foster mother] specifically testified that [the child] does not ask about [the father] and does not want contact with him. . . .

. . . The [GAL] does not support the creation of a permanency guardianship in this case as it poses too much uncertainty about [the father] returning some day to assert his role as [the child's] father.  The [GAL] recommends that [the father's] parental rights be terminated . . . .  She believes that termination of [the father's] parental rights is in [the child's] best interest.  The [GAL] testified that [the child] is at an age where she needs the permanency and stability of living in a family that she

knows, a family in which she fits in, a family that loves her and a family that is committed to her.

(Footnotes omitted.)

## II. DISCUSSION

[¶3]   Here, the court's unfitness findings that the father is either unwilling or unable to take responsibility for the child within a time that is reasonably calculated to meet the child's needs, that the child has been abandoned by the father, and that the father has failed to make a good faith effort to rehabilitate and reunify with the child are all supported by sufficient evidence.   *See* 22 M.R.S. § 4055(1)(B)(2)(b)(ii)-(iv). Particularly, the father's unannounced move to Florida, his intention to remain there for the foreseeable future, and his failure to even visit with the child show that he is unwilling or unable to take responsibility for the child in the time that she needs and that he has abandoned her.   *See* 22 M.R.S. §§ 4002(1-A)(A)-(C), (E)-(F), 4055(1)(B)(2)(b)(ii)-(iii) (2017).

[¶4]   The evidence is also sufficient to support a finding that termination is in the child's best interest, and the court did not abuse its discretion in terminating the father's parental rights instead of ordering a permanency guardianship because, as the GAL testified, the child is at an age where stability and permanency within a family unit that has demonstrated

its commitment to her is of the utmost importance. *See In re Haylie W.*, 2017 ME 157, ¶ 4, 167 A.3d 576. Because a permanency guardianship could undermine that stability for the child, *see id.*; *see also* 22 M.R.S. § 4038-C(3), (6) (2017), who will soon be entering her teenage years, the court did not abuse its discretion in terminating the father's parental rights. *See In re Cameron B.*, 2017 ME 18, ¶¶ 12-13, 154 A.3d 1199.

The entry is:

Judgment affirmed.

---

Richard Charest, Esq., Lewiston, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Lewiston District Court docket number PC-2016-29
FOR CLERK REFERENCE ONLY