MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2018 ME 158
Docket:        Han-18-285
Submitted
  On Briefs:   November 28, 2018
Decided:       December 6, 2018

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, JABAR, HJELM, and HUMPHREY, JJ.

IN RE CHILD OF DOMENICK B.


PER CURIAM

[¶1]  Domenick B. appeals from an order of the District Court (Ellsworth, *Roberts, J.*) terminating his parental rights to his child.[1]  He argues that there is insufficient evidence to support the court's finding of parental unfitness. Alternatively, the father argues that the court abused its discretion by terminating his parental rights rather than imposing a permanency guardianship.  We affirm.

## I.  BACKGROUND

[¶2]  The following facts, all of which are supported by competent evidence, are drawn from the court's judgment and the procedural record.  *See In re Children of Nicole M.*, 2018 ME 75, ¶ 2, 187 A.3d 1.  The child was born in

---

[1]  The mother consented to the termination of her parental rights, and we thus focus only on the procedural history and findings regarding the father.

December 2013, while the mother was incarcerated in Colorado. Several months later, the child's maternal grandparents brought the child to Maine to reside with them, and the father followed shortly afterwards. The mother was released from prison on parole in early 2015 and also returned to Maine.

[¶3] Shortly after the mother's return to Maine, the father was arrested for assaulting her with the child present. The Department of Health and Human Services filed a child protection petition, alleging that the father's substance abuse, anger, and domestic violence placed the child at risk of harm. *See* 22 M.R.S. § 4032 (2017). The court entered a jeopardy order by agreement, placing the child with her maternal grandparents. *See* 22 M.R.S. § 4035 (2017). Among other things, for a successful reunification, the jeopardy order required the father to participate in a substance abuse evaluation and individual therapy to address childhood trauma and anger issues, participate in random drug screening, and refrain from using any nonprescribed mood-altering substances.

[¶4] In November 2017, the Department filed a petition for termination of the father's parental rights. *See* 22 M.R.S. § 4052 (2017). A two-day hearing was held on the petition in May and June 2018. Following the hearing, the court entered a judgment granting the petition to terminate the father's parental

rights after finding that he was unable to protect the child from jeopardy or take responsibility for her within a time reasonably calculated to meet the child's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii) (2017); *In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195.

[¶5] The court's decision was based on the following findings, all of which are supported by competent evidence in the record. *See In re A.M.*, 2012 ME 118, ¶ 29, 55 A.3d 463.

> The court finds that [the father] has not participated in individual therapy to address his childhood trauma issues and how those may impact his parenting capability. [The father] has not participated in therapy to work on his anger issues. He began therapy with [a mental health counselor], participated sporadically, then discontinued treatment October 20, 2017, without completing his goals.

> [The father] has engaged in substance abuse therapy through [a] methadone program since July of 2016. He has had negative tests for opiates through his treatment and reports that his opiate addiction has been in remission for five years. [The father's] substance abuse therapy would be considered successful were it not for his use of alcohol. [The father] has been on notice since he began participation in the [methadone treatment] program that alcohol use is dangerous for him and is therefore prohibited. [The father] was warned to stop his use of alcohol following a failed screen on March 13, 2018. He promised to discontinue his use of alcohol at a subsequent family team meeting. Unfortunately, he tested positive for alcohol twice since March, including the week before this hearing. The [c]ourt concludes that substance abuse therapy has not been completed satisfactorily to this point.

4

The court recognizes that [the father] loves his [child] very much, and he wants very much to reunify with [her]. The court also has no doubt that [the child] loves [her] father. The court finds, however, that [the father] has been very inconsistent in his mental health services, and despite the significant passage of time, he has made insufficient progress towards alleviating jeopardy.

. . . .

[The father], to his credit, has gained employment and taken steps toward establishing a home where he can care for [the child]. [The father] has simply not made the effort at reunification that he should have made . . . .

[The father's] relationship with [the mother] was marred by domestic violence and substance abuse. Both parents report a history of violent behaviors toward each other . . . [and the father] did not complete the therapy he needed to address and understand how his own childhood trauma and anger issues may impact his parenting.

This is an old case, and [the child] needs permanency. The child has been in the custody of DHHS since August 25, 2016. She has been in the care of her maternal grandparents, with or without her parents' involvement, for most of her life. Despite the length of time and the numerous opportunities, father has made insufficient progress and is unable to take responsibility of [the child].

. . . .

[The maternal grandparents] have been providing excellent care for [the child] . . . . Furthermore, the [maternal grandparents] recognize the importance of [the child] having an ongoing relationship with her father to whom she is bonded. The [maternal grandparents] supported [the mother] and [the father] in their attempts at rehabilitation. These proceedings have strained the relationship between the [maternal grandparents] and [the father],

but, they are willing to work to make sure that [the child] has a relationship going forward.

. . . .

. . . . Given the length of this case, the lack of progress by the father, and [the child's] need for permanency, . . . [the guardian ad litem] recommends that [the father's] parental rights be terminated . . . and the court agrees with her assessment.

## II. DISCUSSION

A.    Parental Unfitness

[¶6]  The father's main argument is that there is insufficient evidence to establish his parental unfitness by clear and convincing evidence.  Contrary to his argument, competent evidence supports the court's determination that the father is unable to protect the child from jeopardy or take responsibility for the child within a time reasonably calculated to meet her needs.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii); *In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195.

[¶7]  Throughout the entirety of this case, the father was on notice that addressing his mental health concerns and remaining sober were the court's and the Department's main concerns.  While the father's continued sobriety from opioids is commendable, he was repeatedly warned that positive alcohol tests would put reunification with his child at risk.  Despite this, the father continued to test positive for alcohol use, including the week prior to the

6

termination hearing. Further, the father failed to start mental health treatment for many months and, even then, was inconsistent in his attendance until ultimately ceasing all treatment in late October 2017. Accordingly, the court did not err in finding, by clear and convincing evidence, that the father has failed to alleviate jeopardy or be able to take responsibility for the child despite an almost two-year effort at reunification. *See In re Thomas D.*, 2004 ME 104, ¶¶ 21-22, 854 A.2d 195.

B.     Child's Best Interest

[¶8]  The father alternatively argues that even if the court did not err by determining that he was unfit as a parent, it should have ordered a permanency guardianship rather than termination of his parental rights. We review the court's determination regarding the appropriateness of a permanency guardianship for an abuse of discretion. *See In re Haylie W.*, 2017 ME 157, ¶ 4, 167 A.3d 576; *In re Cameron B.*, 2017 ME 18, ¶ 11, 154 A.3d 1199; *In re Michaela C.*, 2002 ME 159, ¶ 27, 809 A.2d 1245 ("The [court's] judgment on the issue of best interest is entitled to substantial deference because that court is able to directly evaluate the testimony of the witnesses.").

[¶9] Once a court determines that a parent is unfit, it must also determine whether termination of that parent's parental rights is in the child's best

interest. 22 M.R.S. § 4055(1)(B)(2)(a) (2017); *In re Scott S.*, 2001 ME 114, ¶ 19, 775 A.2d 1144. As an alternative to termination, a court may create a permanency guardianship as part of a permanency plan "to establish safe, long-term care for a child who is the subject of a child protection proceeding." *In re Cameron B.*, 2017 ME 18, ¶ 12, 154 A.3d 1199; *see* 22 M.R.S. § 4038-C (2017). When appropriate, "a permanency guardianship allows parents whose child[] cannot be returned to them to have a meaningful opportunity to maintain a legal relationship with their child[], and to have the court determine their rights to have contact with their child[]." *In re Cameron B.*, 2017 ME 18, ¶ 12, 154 A.3d 1199*.*

[¶10] Here, the court expressly considered the option of a permanency guardianship upon the request of the father, but determined that it was not in the child's best interest because of substantial strain in the relationship between the father and the maternal grandparents. *See id.* ¶ 13 (stating that tensions between a foster parent and the parents was an appropriate factor for the court to consider in denying a request for a permanency guardianship). The child has been in the grandparents' care for almost her entire life, and the creation of a permanency guardianship would leave the shadow of future legal proceedings at a time when the child needs a stable, permanent home. *See*

22 M.R.S. §§ 4003(4), 4050(2)-(3), 4055(1)(B)(2)(a) (2017); *In re Haylie W.*, 2017 ME 157, ¶ 4, 167 A.3d 576.  Accordingly, the court did not err or abuse its discretion in terminating the father's parental rights.  *See In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297.

The entry is:

Judgment affirmed.

---

Robert Van Horn, Esq., Van Horn Law Office, Ellsworth, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Ellsworth District Court docket number PC-2016-16
FOR CLERK REFERENCE ONLY