MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:       2019 ME 65
Docket:         Cum-18-386
Submitted
  On Briefs:    April 24, 2019
Decided:        May 7, 2019

Panel:          SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

# IN RE CHILD OF DANIELLE F.

PER CURIAM

[¶1]  Danielle F. appeals from a judgment of the District Court (Portland, *Powers, J.*) terminating her parental rights to her child.[1]  22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii) (2018).  She contends that (1) her due process rights were violated when the court commenced the termination hearing, as scheduled, in her absence, and (2) the court abused its discretion by terminating her parental rights rather than imposing a permanency guardianship.  We affirm the judgment.

[¶2]  Based on clear and convincing evidence in the record, the court found that the mother is (1) unable to protect the child from jeopardy within a time which is reasonably calculated to meet the child's needs, and (2) unable to

---

[1]  On August 6, 2018, the District Court (Portland, *Powers, J.*) entered a judgment terminating the father's parental rights after the father consented in writing to the termination of his rights.  The father initially appealed, but later voluntarily dismissed his appeal.

2

take responsibility for the child. *See id.* § 4055(1)(B)(2)(b)(i)-(ii). The court also found that termination of the mother's parental rights is in the child's best interest. *See id.* § 4055(1)(B)(2)(a) (2018).

[¶3] The court based its decision on the following findings of fact, all of which are supported by competent record evidence.

> This is a tragic situation involving a very young mother who experienced substance abuse, domestic violence, housing, and mental health problems which overwhelm her and seriously affect her ability to parent [the young child]. [The mother] unfortunately at times refused services that she needed and did not understand or acknowledge the parenting deficits she has had that negatively affected her son. Furthermore, she lied repeatably about her ongoing contact with [the child's father], who also had serious parent[ing] issues, when no contact was permitted. This had a detrimental effect on her as well as this child. [The mother's] insistence on seeing [the child's father] resulted from poor decision making on her part, recognizing that she is young and had numerous life stresses. Her credibility with the court is limited, though she appeared more straightforward at the hearing.

> [The mother] continues her regular use of marijuana, has been to drug counseling off and on, has used other drugs in recent months, has violated group home rules enough to lose her housing, and has continued to see a man who was violent with her in [the child's] presence or otherwise.

> She has had just over two years to reunify and accept necessary services. Her child's trial placement did not end well. Her efforts to reunify can be described as "poor" to "fair." [The mother's] life itself has been stressful and chaotic with many unresolved parenting issues remaining. Her love of this child is not sufficient to remedy her deficits.

All the above supports that she is, by clear and convincing evidence, unable to meet this child's needs and protect him from the longstanding jeopardy within any reasonable time to meet his needs as a 2½ year old boy. . . .

. . . .

This child has been in custody for all but a few months of his life.[2]  [He] needs stability, consistency, and permanency.  He cannot benefit from more uncertainty related to this case and his mother's inability to be a safe and proper parent.  His best chance for success requires termination of this parent's rights, followed by adoption.

[The child] has had several placements in the last two years, and many transitions and disruptions are not good for a still developing and needy toddler.  His current home is meeting his basic needs and has [done so] for several months in total.  This home is pre-adoptive and may result in permanency in that way, though this court is not deciding any adoption issue at this point.

[The mother] has had two years to understand and deal with her parenting issues outlined in the petition and the August 2016 jeopardy order.  She has been largely unsuccessful and has not always given the full effort needed to reunify.  She has been unable to prioritize being a good, safe parent for her son, instead focusing on substance use and her unsafe relationship with . . . the father.

It is sadly but clearly in [the child's] best interest for the court to terminate [the mother's] parental rights to him.

---

[2] The child had been in the Department's custody for approximately eighteen months at the time of the hearing, but was in the mother's custody for approximately twelve months.  Because the record here contains other ample evidence for the court to base its parental unfitness and best interest determinations on, this factual error is harmless.  *See In re Child of Ronald W.*, 2018 ME 107, ¶ 7 n.2, 190 A.3d 1029 ("A factual error in a child protection order is harmless if it is highly probable that the error did not prejudice the parents or contribute to the result in the case.").

[¶4]  Following the issuance of the judgment terminating her parental rights, the mother timely appealed.  *See* 22 M.R.S. § 4006 (2018); M.R. App. 2B(c)(1).

[¶5]  The mother first argues that the termination judgment should be vacated because she was denied due process when the court commenced the termination hearing—as scheduled—in her absence, although it was aware that she would be arriving in a few hours.  "In termination cases, where fundamental interests are at stake, due process requires: notice of the issues, an opportunity to be heard, the right to introduce evidence and present witnesses, the right to respond to claims and evidence, and an impartial fact-finder."  *In re Child of James R.*, 2018 ME 50, ¶ 17, 182 A.3d 1252.  Due process, however, "does not require that a parent be physically present at the termination hearing, as long as notice of the hearing was given in a manner calculated to give actual notice and the parent had an *opportunity* to be heard."  *In re Child of Tanya C.*, 2018 ME 153, ¶ 10, 198 A.3d 777.

[¶6]  Because the mother had the opportunity—through her attorney—to examine witnesses and respond to claims and evidence, *see In re Adden B.*, 2016 ME 113, ¶ 9, 144 A.3d 1158, and because she has failed to demonstrate on appeal how her participation in the part of the trial where she was not

present could have affected the court's findings, *see In re G.W.*, 2014 ME 30, ¶ 9, 86 A.3d 1228, the mother's due process rights were not violated, and the court did not abuse its discretion in determining that the hearing could proceed without her presence.

[¶7] The mother next contends that the court should have ordered a permanency guardianship rather than termination of her parental rights. The mother fails to recognize, however, that (1) the grandparents with whom the child was placed were not open to a permanency guardianship, (2) the guardian ad litem expressly recommended against a permanency guardianship as well, (3) there were tensions between the mother and the grandparents, and (4) the court found that the child needs permanency now, not years down the road, *see* 22 M.R.S. § 4050(2)-(3) (2018). *See In re Child of Domenick B.*, 2018 ME 158, ¶ 10, 197 A.3d 1076; *In re Cameron B.*, 2017 ME 18, ¶ 13, 154 A.3d 1199; *In re David W.*, 2010 ME 119, ¶ 10, 8 A.3d 673.

[¶8] "We review the court's determination regarding the appropriateness of a permanency guardianship for an abuse of discretion." *In re Child of Domenick B.*, 2018 ME 158, ¶ 8, 197 A.3d 1076; *see In re Michaela C.*, 2002 ME 159, ¶ 27, 809 A.2d 1245 ("The District Court's judgment

6

on the issue of best interest is entitled to substantial deference because that court is able to directly evaluate the testimony of the witnesses.").

[¶9]  Before a court may terminate a parent's parental rights, the court must find at least one ground of parental unfitness, which the mother does not contest here, and determine, "by clear and convincing evidence . . . that termination is in the child's best interest."  *In re C.P.*, 2016 ME 18, ¶ 30, 132 A.3d 174; *see also* 22 M.R.S. § 4055(1)(B)(2).

[¶10]  Contrary to the mother's contentions, the evidence is sufficient to support the court's finding that termination is in the child's best interest, and, as such, the court did not abuse its discretion in terminating the mother's parental rights instead of ordering a permanency guardianship.  *See In re C.P.*, 2016 ME 18, ¶ 34, 132 A.3d 174; *In re David W.*, 2010 ME 119, ¶ 10, 8 A.3d 673.

The entry is:

Judgment affirmed.

---

Andrea S. Manthorne, Esq., Roach, Hewitt, Ruprecht, Sanchez & Bischoff, Portland, for appellant mother

Aaron M. Frey, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket number PC-2016-58
FOR CLERK REFERENCE ONLY