MAINE SUPREME JUDICIAL COURT          Reporter of Decisions
Decision:    2023 ME 27
Docket:     And-22-274
On Briefs:  February 22, 2023
Decided:   April 18, 2023

Panel:      MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.

ZACK FRANCOEUR

v.

MEAGAN BERUBE

HORTON, J.

[¶1]  Zack Francoeur appeals from a judgment entered in the District Court (Lewiston, *Faircloth, J.*) establishing parental rights and responsibilities concerning his child with Meagan Berube.  In the judgment, rendered after a contested hearing, the court awarded primary residence and final decision making for the child to Berube, granted supervised contact for three hours per week to Francoeur, and ordered Francoeur to pay weekly child support to Berube.  Francoeur's appeal challenges the court's findings regarding domestic violence and its calculation of his income for purposes of child support.  The court's calculation of Francoeur's income is well-supported in the law and the evidence.  Because the court's judgment includes a finding regarding domestic

2

violence that is contrary to the evidence and that we cannot say is harmless error, however, we vacate the judgment in part and remand.

## I. BACKGROUND

[¶2]  On May 21, 2021, Francoeur filed a complaint for the determination of parental rights and responsibilities.  Berube filed an answer and counterclaim on May 25, 2021.  In July 2021, the parties agreed to an interim child support order, requiring Francoeur to pay Berube $110.88 per week.  The court held a final hearing on Francoeur's complaint and Berube's counterclaim on July 19, 2022.  The trial court found the following facts when it addressed all issues in this parental rights matter, all but one of which (the finding regarding domestic violence) are supported by competent evidence in the record. *See Low v. Low*, 2021 ME 30, ¶ 2, 251 A.3d 735; *Vibert v. Dimoulas*, 2017 ME 62, ¶ 2, 159 A.3d 325.

[¶3]  Francoeur and Berube started dating in 2014.  They never married but are the legal and biological parents of a child born in November 2015.  Six months after the child was born, Berube moved out of the home with the child but consistently brought the child over to Francoeur's home for visits during the first few years of the child's life.

[¶4]  Francoeur is the self-employed proprietor of a marijuana-growing business operated from a structure connected to his residence.  In 2021, he spent $17,476 on what he testified was a rebuild and upgrade of his combined residence and business premises, including "epoxy floors, glaze, painting, insulation, plumbing work, pumps [and] watering tanks."  Francoeur admits to having an extensive criminal record that includes theft, reckless conduct with a firearm, driving without a license, and crimes related to drugs.  Francoeur served time in jail on multiple occasions during 2018 and 2019.  At the time of trial, he was facing charges of tampering with a witness and disorderly conduct arising from an incident at a bar.

[¶5]  Shortly after Francoeur's release from jail in February 2019, Berube brought the child to his house for a visit but thereafter prevented Francoeur from seeing the child for about four months.  During the summer of 2020, Francoeur agreed to give Berube money if he could see the child.  After a visit with the child, Francoeur refused to return the child to Berube, so she sought an order of protection from abuse.  The parties agreed to a protection order on October 2, 2020, that awarded Berube parental rights and responsibilities and provided Francoeur with one three-hour supervised visit per month.

4

[¶6] During her testimony at the hearing, Berube expressed concerns regarding the safety of Francoeur's home and his drug use and driving. However, Berube's contention that Francoeur's parental rights should be strictly limited also rested on her allegations of domestic violence. In her opening statement, Berube said that Francoeur "is violent," that he had not shown proof of "domestic violence counseling," and that "I don't think anyone would want a small child to be with him unsupervised at this time." Berube testified that while they were together, Francoeur became "physical"—meaning physically violent—with her at times, and pushed, grabbed, and choked her. Later, Berube cross-examined Francoeur in depth about whether he had engaged in domestic violence against Berube and others with whom he had been in a relationship. In her closing argument, she reiterated that the case involved "a serious issue with domestic violence."

[¶7] However, Francoeur adamantly and repeatedly denied during his testimony that he had ever been "physical" or engaged in domestic violence with Berube or in any of his subsequent relationships. Francoeur testified that he has "turned a corner" in his life and has been sober from drugs since September 2018.

[¶8]  The court entered its judgment on August 10, 2022.  The court's judgment awarded primary residence and final decision making to Berube and supervised visits of three hours per week to Francoeur and "any other contact as the parties agree."  In assessing the child's best interest, the court expressly considered multiple factors enumerated in 19-A M.R.S. § 1653(3) (2023).  In considering the factor of domestic violence, *id* § 1653(3)(L), the court found that Francoeur had "grabbed . . . and pushed" Berube and had "choked her a bit" and that Berube had ended the relationship because of a "little bit of physical abuse."  The court also found that Francoeur "does not dispute" Berube's assertions of domestic violence.

[¶9]  The court's judgment ordered Francoeur to pay Berube $212 per week in child support.  The court calculated Francoeur's income for the purpose of child support at $55,938, using figures from his most recent federal income tax return, which was for tax year 2021.  In declaring his adjusted gross income on his tax return, Francoeur excluded the $17,476 expenditure on his property and a $2,717 payment of self-employment tax, but the court determined that

6

both amounts should be included in Francoeur's gross income for purposes of child support.[1]

[¶10]  Francoeur did not file a motion for further findings of fact and conclusions of law, *see* M.R. Civ. P. 52(b), 120(c), but he filed a timely appeal from the judgment.  *See* 14 M.R.S. § 1901 (2023); 19-A M.R.S. § 104 (2023); M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

[¶11]  Francoeur's appeal challenges the court's award of supervised contact with the child for three hours per week, with additional contact by agreement, and the court's calculation of his income for purposes of child support.  Because Francoeur did not move for additional or amended findings, in evaluating Francoeur's appeal, we assume that the court implicitly made all findings consistent with the evidence that are necessary to support the judgment.  *See* M.R. Civ. P. 52(b); *Powell v. Powell*, 645 A.2d 622, 624 (Me. 1994); *Dube v. Dube*, 2016 ME 15, ¶ 5, 131 A.3d 381.  We review for clear error the

---

[1]  The judgment states:

> The [c]ourt finds that the deduction on line 21 of Schedule C of father's tax return is inappropriate to use in calculating child support.  Those funds were used towards the refurbishing/upgrading of the marijuana facility and father's residence.  Further, the [c]ourt finds that the adjustment on line 10 of the father's 2021 Form 1040 (credit for one-half the self-employment tax) is inappropriate to use in calculating child support.

court's factual findings, including findings regarding a party's gross income, *Ehret v. Ehret*, 2016 ME 43, ¶ 14, 135 A.3d 101; *Young v. Young*, 2015 ME 89, ¶ 5, 120 A.3d 106; *Powell*, 645 A.2d at 624, and we review for an abuse of discretion the court's decisions on parental rights, including rights of contact. *Dube*, 2016 ME 15, ¶ 5, 131 A.3d 381.

## A.     Income Calculation

[¶12]   Contrary to Francoeur's contentions, the court did not err in calculating his gross income for purposes of child support.  *See Dostanko v. Dostanko*, 2013 ME 47, ¶ 14, 65 A.3d 1271.  A parent's child support obligation is based on "gross income," *see* 19-A M.R.S. § 2006(1) (2023), and "[g]ross income includes gross receipts minus ordinary and necessary expenses when a party is self-employed," 19-A M.R.S. § 2001(5)(C) (2023).  Based on Francoeur's self-employed status and his description of the $17,476 expenditure as being for a "rebuil[d]" and "upgrad[e]" of his property, the court did not clearly err in deciding that the $17,476 amount did not reflect an ordinary business expense that could be subtracted from gross income in calculating Francoeur's income for child-support purposes.  Similarly, the court correctly concluded that the $2,717 in self-employment tax that Francoeur had paid could not be subtracted from gross income in calculating his income for child-support purposes

8

because the payment is not an "ordinary . . . expense" of the business. *See, e.g.*,

*MacDougall v. Dep't of Hum. Servs.*, 2001 ME 64, ¶ 10, 769 A.2d 829; *Pyle v. Pyle*,

2017 ME 101, ¶¶ 11-12, 162 A.3d 814.

## B. Finding Regarding Domestic Violence in Relation to the Best Interest Factors

[¶13] Francoeur contends that the court clearly erred in finding that he

does not dispute Berube's testimony that he grabbed, pushed, and choked her

and that the error is not harmless because it influenced the court's decision to

award him very limited contact with the child. Berube responds by contending

that, if there was error in the finding, it was harmless.

[¶14] In its discussion of the child's best interest,[2] the court found that

> [i]n the past the parties argued. Father has grabbed mother and pushed her to move her out of the way. One time he pushed her up against a wall and "choked her a bit" according to mother. Mother left father because of the arguing and a "little bit of physical abuse." *Father does not dispute mother's statements.* Mother is fearful of father and for that reason does not communicate with him frequently. There has been no protection from abuse matter

---

[2] "According to 19-A M.R.S. § 1653(3), in making an award of parental rights and responsibilities and determining a child's residence and parent-child contact, a divorce court 'shall apply the standard of the best interest of the child' and 'shall consider' a list of factors set forth in the statute." *Whitmore v. Whitmore*, 2023 ME 3, ¶ 8, 288 A.3d 799; *see Nadeau v. Nadeau,* 2008 ME 147, ¶ 35, 957 A.2d 108. "In making factual findings, the court must consider all properly admitted evidence and then apply its independent judgment to that evidence in [making] its findings and [reaching its] conclusions." *Sulikowski v. Sulikowski*, 2019 ME 143, ¶ 10, 216 A.3d 893. "A court's discretion in determining rights of contact is constrained by the principle that except when a court determines that the best interest of a child would not be served, it is the public policy of this State to assure minor children of frequent and continuing contact with both parents." *Dube v. Dube*, 2016 ME 15, ¶ 6, 131 A.3d 381 (quotation marks omitted).

between the parties arising out of physical abuse between the parties.

(Emphasis added).

[¶15] We agree with Francoeur that the finding that he does not dispute Berube's testimony was clearly erroneous because Francoeur specifically denied on rebuttal direct examination that he had ever grabbed, pushed, or choked Berube,

> Q [Francoeur's counsel]: [D]o you admit grabbing, pushing, or choking [Berube], either a little bit or a lot?
>
> A [Francoeur]: No, I haven't.

He further testified that he was not violent either with Berube or during any of his other relationships.

[¶16] Because the court found that there was no conflict in the parties' testimony concerning domestic violence, we cannot assume that the court made an implicit finding that Berube's testimony was more credible than Francoeur's contrary testimony. *See Sulikowski v. Sulikowski*, 2019 ME 143, ¶ 11, 216 A.3d 893. The court may have accepted Berube's testimony because the court believed that Francoeur "[did] not dispute" it. *See id*. We will treat a court's erroneous characterization of the evidence as harmless error "if it does not affect the substantial rights of the parties." *Gordon v. Cheskin*, 2013 ME 113,

¶ 12, 82 A.3d 1221; *see Remick v. Martin*, 2014 ME 120, ¶ 10, 103 A.3d 552. Here, however, we are unable to determine affirmatively that the court's erroneous characterization of Francoeur's testimony did not affect its decision to limit Francoeur's contact with his child to a few hours of supervised contact per week. Although Francoeur raises other objections to the court's award of limited, supervised contact with the child,[3] we leave it for the court to determine on remand whether increased contact with Francoeur, presently or over time and with or without specified conditions, is consistent with the child's best interest. *See, e.g.*, *Dube*, 2016 ME 15, ¶¶ 6-7, 131 A.3d 381. We must therefore vacate the judgment and remand for the trial court to issue an amended judgment.

The entry is:

> Judgment affirmed in part, vacated in part, and remanded for the court to issue an amended judgment consistent with this opinion.

---

[3] For instance, Francoeur objects to the court's award of three hours of supervised contact per week, arguing that it "erects a structural barricade" to his relationship with the child that could last until the child reaches adulthood rather than "outlin[ing] a path for [Francoeur] to improve his parental visitation rights" over time.

Carl E. Woock, Esq., and Stephen C. Smith, Esq., Steve Smith Trial Lawyers, Augusta, for appellant Zack Francoeur

Rebecca V. Brochu, Esq., Robinson, Kriger & McCallum, Portland, for appellee Meagan Berube

Lewiston District Court docket number FM-2021-308
FOR CLERK REFERENCE ONLY