MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2023 ME 49
Docket:      Ken-23-42
Argued:      July 6, 2023
Decided:     August 15, 2023

Panel:       STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

IN RE CHILDREN OF QUINCY A.

JABAR, J.

[¶1] Quincy A. and Sharon C. appeal from a judgment of the District Court (Augusta, *Nale, J.*) terminating their parental rights to their children. *See* 22 M.R.S. § 4055(1)(A)(1)(a), (B)(2) (2023). On appeal, the father contends (1) that the court erred when it found by clear and convincing evidence that the father was unfit as a parent and (2) that the Department failed to meet its statutory obligations pursuant to 22 M.R.S. § 4041(1-A)(A) (2023), and both parents contend that the court erred and abused its discretion when it found that terminating the parents' parental rights, rather than establishing a permanency guardianship, was in the best interests of the children.[1] For the reasons stated below, we affirm the decision of the trial court.

---

[1] The mother does not contest the trial court's unfitness findings, and competent evidence in the record supports the court's findings of the mother's unfitness. *See In re Child of Louise G.*, 2020 ME 87, ¶ 8, 236 A.3d 445.

## I.  BACKGROUND

[¶2]  On July 27, 2021, the Department sought, and the District Court (Augusta, *Davis, J.*) signed, an order of preliminary protection as to the children at issue here.  The court (*Churchill, J.*) scheduled a summary preliminary hearing for August 6, 2021, at which both parents appeared and waived their right to a hearing.

[¶3]  By agreement of the mother and the Department, the court (*Montgomery, J.*) issued a jeopardy order that was entered as to the mother on March 14, 2022.  Jeopardy was based on the mother's misuse of substances while caring for the children, her continued relationship with the father despite the father's history of domestic violence against her, and her lack of recognition of the serious emotional and physical risk that the father posed to her and the children.  On March 14 and March 15, 2022, the court held a jeopardy hearing as to the father.  After the hearing, the court found jeopardy as to the father due to his history of domestic violence against the mother.  Specifically, the court noted its concern about the father's continued denial of his domestic violence against the mother.  The court called the denials "remarkable and unbelievable," and further noted that the oldest child had witnessed some of

these episodes of domestic violence. Thereafter, on August 25, 2022, the court held a judicial review and permanency planning hearing.

[¶4]  On August 29, 2022, the Department petitioned to terminate the parents' parental rights as to the children.  On October 5, 2022, the Department filed its first reunification plan as to each parent.  Neither plan had been signed by the parent to whom the plan applied.  The court (*Nale, J.*) held a two-day hearing on the termination petitions on December 16, 2022, and January 12, 2023.  On February 6, 2023, the court issued its judgment terminating the parental rights of both parents as to both children.

[¶5]  The court found the following facts, which are fully supported by competent evidence in the record, by clear and convincing evidence.  *See In re Child of Amber D.*, 2020 ME 30, ¶ 6, 226 A.3d 1157.  The parents are the biological parents of both children at issue in this case.  This case is the most recent in a series of child protection cases involving the parents within the past seven years.  The oldest child has been in the care and custody of the Department three separate times in his life.

[¶6] The parents have a history of domestic violence in their relationship that they have consistently denied.  There have been numerous reports of domestic violence between the parents, including by the oldest child.  Although

the parents ultimately acknowledged during the termination of parental rights hearing that there was domestic violence in their relationship, the court found the previous denials "absolutely stunning" considering the extent of the history of domestic violence between the parents. The parents minimize the domestic violence and refuse to acknowledge the impact that the domestic violence has had on their children, with the father outright denying that the children had ever witnessed domestic violence and saying the domestic violence made no impact on them. The mother also refuses to acknowledge the impact that the domestic violence has had on the children, and she has not put the children's needs over her own. Similarly, the mother has a limited understanding of the impact that her substance use disorder has had on her children. For example, the mother tested positive for illicit substances at least once, but she continued to deny using any illicit substances when asked about the positive tests.

[¶7] Although the parents have engaged in services, they would require a long period of time to complete those services and be able to take responsibility for the children and protect them from jeopardy. The mother would require at least three to six months to complete her services, if not longer. It is unclear how long reunification would take for the father because the Department knows little about whether the father has made any progress.

The father failed to provide the Department with updated contact information and releases for his services in a timely manner, and family team meetings had to be rescheduled multiple times to ensure the father's participation. The Department offered to make referrals to service providers for the father, but he said that he would self-refer. The trial court found that reunification for both parents could take substantial amounts of time given both parents' lack of progress at the time of the termination hearing and their failure to recognize the impact of their lack of progress in these services on their ability to take responsibility for the children and protect them from jeopardy.

[¶8] The children struggled early in this case but ultimately have found stability in a resource placement with their half-sister. The older child has spent one-third of his life in foster care and the younger child has spent one-half of her life in foster care, and they require permanency. In less than a year, the Department had to move the children multiple times due to the oldest child's behavioral problems stemming from the domestic violence that the child witnessed between the parents. In January 2022, the Department placed the children with their maternal half-sister. Their needs are being addressed in this placement, and their maternal half-sister has been a strong advocate for the children. However, the trial court found that the children require permanency

immediately. The oldest child has reported a fear of being "swept away" to yet another placement at some point in time, and both children have been affected by the domestic violence between their parents.

[¶9] The court found that both parents were unfit because they (1) were unwilling or unable to protect the children from jeopardy and these circumstances were unlikely to change within a time reasonably calculated to meet the children's needs, (2) were unwilling or unable to take responsibility for the children within a time which is reasonably calculated to meet the children's needs, and (3) failed to make a good faith effort to rehabilitate and reunify with the children; and that terminating both parents' parental rights was in the best interests of the children. The court further found that the Department's proposed permanency plan of adoption was in the best interests of the children. Both parents timely appealed. *See* 22 M.R.S. § 4006 (2023); M.R. App. P. 2B(c).

## II. DISCUSSION

### A.    Standard of Review

[¶10]  "We review the court's findings of fact for clear error and the court's ultimate determination that termination of the parental rights is in the

child's best interest for an abuse of discretion." *In re Children of Jason C.*, 2020 ME 86, ¶ 7, 236 A.3d 438 (quotation marks omitted).

**B.    Parental Unfitness**

[¶11]  On appeal, the father contends that the court erred when it found by clear and convincing evidence that the father was unfit as a parent and that the Department failed to meet its statutory obligations pursuant to 22 M.R.S. § 4041(1-A)(A).

[¶12]  We will set aside a finding of parental unfitness "only if there is no competent evidence in the record to support it, if the fact-finder clearly misapprehends the meaning of the evidence, or if the finding is so contrary to the credible evidence that it does not represent the truth and right of the case." *In re Child of Katherine C.*, 2019 ME 146, ¶ 2, 217 A.3d 68 (quotation marks omitted).

[¶13]   To find parental unfitness, a court must find by clear and convincing evidence one of four statutory grounds. *In re Child of Olivia F.*, 2019 ME 149, ¶ 6, 217 A.3d 1106; *see* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(iv). "Where the court finds multiple bases for unfitness, we will affirm if any one of the alternative bases is supported by clear and convincing evidence." *In re K.M.*, 2015 ME 79, ¶ 9, 118 A.3d 812 (quotation marks omitted).  In evaluating

8

parental unfitness, "the court must examine from the child's perspective—not the parent's—the time within which the parent can take responsibility for a child and protect that child from jeopardy." *In re Child of Walter C.*, 2019 ME 121, ¶ 7, 213 A.3d 113 (quotations marks omitted).

[¶14] Pursuant to 22 M.R.S. § 4041, "the Department is obligated, with the participation of the parent, to develop a rehabilitation and reunification plan that sets out, inter alia, the reasons the child was removed from the home, the changes the parent must implement to eliminate jeopardy to the child, and the services the Department will provide that must be completed before the child may be returned to the parent's custody." *In re Child of Rebecca J.*, 2019 ME 119, ¶ 6, 213 A.3d 108. "The rehabilitation and reunification plan is the roadmap by which the Department and a parent are expected to cooperatively seek to rehabilitate the conditions that resulted in jeopardy to the child." *Id.* (quotation marks omitted).

[¶15] Looking first to the Department's efforts, although the Department did file a rehabilitation and reunification plan as to the father, we note that this plan was unsigned by the father and was filed *after* the Department had filed its petition to terminate the father's parental rights.[2] We are concerned with the

---

[2] Additionally, in its judicial review order, dated August 25, 2022, the court (*Montgomery, J.*) ordered the Department to file a reunification plan as to the father, with a copy provided to the

Department's filing a petition to terminate a parent's parental rights prior to filing the plan that is intended to help the parent understand what that parent must do to alleviate jeopardy and maintain parental rights. *See In re Thomas D.*, 2004 ME 104, ¶ 26, 854 A.2d 195 ("If the Department files a petition for termination of parental rights, the plan establishes benchmarks by which to assess whether a parent has successfully ameliorated the problems that led to the initial finding of jeopardy."). The reunification plan also protects the rights of parents by providing notice of how the parent can achieve reunification within a timeframe that will reasonably meet the child's needs. *Id*. Absent those circumstances where the Department does not have the obligation to reunify, the Department and the parent share the obligation to pursue reunification, and the reunification and rehabilitation plan is the centerpiece of the Department's obligation. *See id.* ¶¶ 23, 26 ("Unless the Department has been excused from reunification efforts, the rehabilitation and reunification

parties, no less than fourteen days after the entry of the jeopardy order. Although the record contains evidence that the Department did go through the plan with the father, we note that the docket reflects that the plan was not filed until October 5, much later than fourteen days after the judicial review hearing. We also note that the trial court did not have the benefit of the reunification plan at the judicial review and permanency planning hearing, which would, of course, have aided the trial court in reviewing the Department's efforts and the parents' efforts in reunification. *See In re Thomas D.*, 2004 ME 104, ¶ 26, 854 A.2d 195.

plan is the centerpiece of child protective proceedings following a jeopardy determination.").

[¶16]  However, as we have previously articulated, if a parent has notice of the issues that must be addressed to alleviate jeopardy, and the trial court's finding of unfitness is not solely supported by the parent's failure to engage in good faith in rehabilitation and reunification efforts, then we will not vacate a trial court's unfitness finding.  *In re Child of Rebecca J.*, 2019 ME 119, ¶¶ 7-11, 213 A.3d 108.  In *In re Child of Rebecca J.*, the Department failed to file a reunification and rehabilitation plan, but we affirmed the termination of parental rights by the trial court because the mother was aware of what the Department required, and her unfitness was based on her inability to protect the child from jeopardy and take responsibility for the child.  *Id.*

[¶17]  Here, the trial court found that the father was unfit on grounds besides his failure to engage in good faith reunification with his children, and competent evidence in the record reflects that the father had notice of the issues that he needed to address to alleviate jeopardy.  The trial court found that the father was unfit because the father (1) was unwilling or unable to protect the children from jeopardy and these circumstances were unlikely to change within a time reasonably calculated to meet the children's needs,

(2) was unwilling or unable to take responsibility for the children within a time which is reasonably calculated to meet the children's needs, and (3) failed to make a good faith effort to rehabilitate and reunify with the children, meaning that the unfitness finding was based on more than only the father's failure to make good faith efforts to comply with a reunification plan that he did not sign and that the Department filed after it filed its petition to terminate the father's parental rights. Competent evidence in the record reflects that the father knew what the Department expected of him, and during oral argument, the father's counsel confirmed multiple times that the father knew what the Department expected of him. The Department caseworkers testified that they told the father that he needed to engage in mental health treatment, and the father himself testified that he tried to seek mental health treatment and complete parenting classes and a certified batterer's intervention program to comply with the Department's expectations. Although the trial court did not make an explicit finding that the father knew what the Department expected of him, the father's counsel did not move for further findings of fact pursuant to Maine Rule of Civil Procedure 52, and therefore "we assume that the court implicitly made all findings consistent with the evidence that are necessary to support the judgment." *Francoeur v. Berube*, 2023 ME 27, ¶ 11, 293 A.3d 418. Therefore,

competent evidence in the record reflects that the father knew what the Department expected of him to alleviate jeopardy as to his children.

[¶18]  Further, there is sufficient competent evidence in the record to support the trial court's findings of unfitness.  The court found that the father failed to recognize the impact that domestic violence had on the children and that he had been unable to make sufficient progress towards alleviating jeopardy and taking responsibility for the children in a timeframe reasonably calculated to meet the children's needs.  S*ee In re Children of Corey W.*, 2019 ME 4, ¶¶ 7, 20, 199 A.3d 683 (affirming termination of the mother's parental rights when she made no progress toward understanding her children's needs, she showed no insights into how her parenting deficiencies impacted her children, and the children needed certainty immediately); *In re Hope H.*, 2017 ME 198, ¶ 10, 170 A.3d 813 ("Marginal progress toward reunification and a simple desire to remain parents is not enough to ameliorate jeopardy and meet the children's needs.").

[¶19]  Therefore, we conclude that the trial court did not err when it found that both parents were unfit.

## C.     Best Interests of the Children

[¶20]  Both parents contend that the court abused its discretion when it found that terminating the parents' parental rights, rather than establishing a permanency guardianship, was in the best interests of the children.

[¶21]  "[A] court must consider many factors" in making its best interest determination, and that decision "is not limited to whether or not there is affirmative evidence that contact with an absent parent will be harmful to the child;" rather, "[t]he constellation of relevant circumstances will be different in each case." *Adoption by Jessica M.*, 2020 ME 118, ¶¶ 21, 23, 239 A.3d 633 (alteration and quotation marks omitted).  "Permanency in a particular case must be fashioned from the actual circumstances and needs of the children before the court." *Id.* ¶ 21 (quotation marks omitted).  After each permanency hearing, the trial court must adopt a permanency plan for a child that contains determinations on permanency options for the child.  22 M.R.S. § 4038-B(3), (4)(A) (2023).[3]

[¶22]  The Legislature has provided five different permanency options, including adoption and permanency guardianship.  *Id.* § 4038-B(4)(A)(1)-(5).

---

[3] Title 22 M.R.S. § 4038-B(4)(A) (2023) provides the following permanency options: (1) returning the child to the parent; (2) adoption; (3) a permanency guardianship; (4) placing the child with a fit and willing relative; and (5) placing the child in another planned permanent living arrangement.

"[A] permanency guardianship may be ordered to establish safe, long-term care for a child, but it is not appropriate when the child needs the certainty and stability of adoption and the parties otherwise need clarity in their respective roles." *In re Child of Dawn B.*, 2019 ME 93, ¶ 11, 210 A.3d 169 (alteration and quotation marks omitted). Unlike adoption, a permanency guardianship allows for a court to order that a parent have reasonable contact with the child where it is in the best interests of the child. 22 M.R.S § 4038-C(3) (2023). If a trial court finds that a child needs permanency, then the trial court should not automatically conclude that terminating the parents' parental rights and adoption is the best way to effectuate permanency. The Legislature has determined that both adoption and permanency guardianships are equally available to further the goal of permanency for children, *see* 22 M.R.S § 4038-B(4)(A)(2), (3), and courts should consider the particularities of what kind of permanency and stability a child needs before determining whether adoption, rather than one of the other equally available options, is the best course. A finding that a child needs permanency cannot, without more, be enough to conclude that termination is in the best interest of the child because this would never allow a court to conclude that any other permanency option, including a permanency guardianship, would be in the best interest of the child.

[¶23]  In *In re Emma C.*, 2018 ME 7, ¶ 4, 177 A.3d 628, we discussed the option of a permanency guardianship instead of a termination and adoption. We affirmed the trial court's decision to terminate a parent's parental rights, concluding that the trial court had not abused its discretion in finding that adoption, rather than permanency guardianship, was in the best interest of the child "because, as the GAL testified, the child is at an age where stability and permanency within a family unit that has demonstrated its commitment to her is of the utmost importance."  *Id.*  Although the child's need for permanency factored into the trial court's determination that terminating the father's parental rights was in the best interest of the child, the court also considered the particularities of that child, such the child's age and her circumstances.  *Id.* Given the child's need for permanency, we discussed two of the Legislature's permanency options and affirmed the trial court's determination that adoption, rather than a permanency guardianship, would be in the best interest of that particular child.  *Id.*

[¶24]  In sum, to ensure that terminating a parent's parental rights is in the best interest of the child, there must be some reason besides a general need for permanency that adoption is the best permanency option for that child.  The risk of a generalized finding that permanency always requires adoption, and

therefore termination of a parent's parental rights, is that a court might terminate a parent's parental rights when it is not in the best interest of a child and another, better permanency option exists. *See Adoption by Jessica M.*, 2020 ME 118, ¶ 21, 239 A.3d 633 ("Permanency in a particular case must be fashioned from the actual circumstances and needs of the children before the court." (alteration and quotation marks omitted)).

[¶25] This case presents such a risk. Here, the trial court concluded that the children needed permanency and that adoption would provide the children with that permanency without discussing why adoption, rather than a permanency guardianship, was in the best interests of *these* children. The trial court's determination that termination of the mother's parental rights was in the best interests of the children contradicted some of the trial court's findings, such as that the court hoped that the mother would not be shut out of the children's lives, that the children love their parents, and that "[o]ne thing the court cannot do is say [the mother] is not the mother. She will always be the mother, whatever the adoptive parent does now . . . ." The trial court's findings seem to suggest that a permanency guardianship, rather than adoption, could have been in the children's best interests because it could allow the mother to stay involved with the children. *See* 22 M.R.S § 4038-C(3).

[¶26]  However, in the absence of a Rule 52 motion for further findings, wherein the court could have been asked to discuss the reason for determining that adoption, rather than a permanency guardianship, was in the children's best interests, "we assume that the court implicitly made all findings consistent with the evidence that are necessary to support the judgment," *Francoeur*, 2023 ME 27, ¶ 11, 293 A.3d 418, and we assume that the trial court considered both options and determined that terminating the parents' parental rights was in the best interests of the children.  *See In re Child of Danielle F.*, 2019 ME 65, ¶ 7, 207 A.3d 1193 (rejecting the mother's argument that the trial court should have ordered a permanency guardianship because "the court found that the child needs permanency now, not years down the road"); *In re Child of Nicole M.*, 2018 ME 75, ¶ 26 & n.9, 187 A.3d 1 ("In cases where the evidence raised the prospect of disruptive disputes between a parent and a guardian, we affirmed decisions of the trial court that a permanency plan of adoption—and not a permanency guardianship—is in the child's best interest.").  We conclude that the trial court did not err or abuse its discretion when it determined that terminating the parents' parental rights was in the children's best interests.

## III. CONCLUSION

[¶27] In conclusion, the trial court did not err in its findings of unfitness regarding the mother and father and did not err or abuse its discretion in determining that terminating the parents' parental rights was in the best interests of the children.

The entry is:

Judgment affirmed.

---

Henry W. Griffin, Esq. (orally), Auburn, for appellant Qunicy A.

Allison Muir Kuhns, Esq. (orally), Law Office of Allison Muir Kuhns, Portland, for appellant Sharon C.

Aaron M. Frey, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen. (orally), Office of the Attorney General, Bangor, for appellee Department of Health and Human Services

Augusta District Court docket number PC-2021-38
FOR CLERK REFERENCE ONLY